Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/26/2018 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ROSARIO BETANCOURT-GARCIA, APPELLANT.
___ N.W.2d ___

Filed April 26, 2018.    No. S-17-690.

1. **DNA Testing: Appeal and Error.** A motion for DNA testing is addressed
   to the discretion of the trial court, and unless an abuse of discretion is
   shown, the trial court's determination will not be disturbed.
2. `____: ____. An appellate court will uphold a trial court's findings
   of fact related to a motion for DNA testing unless such findings are
   clearly erroneous.
3. **DNA Testing.** The DNA Testing Act is a limited remedy providing
   inmates an opportunity to obtain DNA testing in order to establish inno-
   cence after a conviction.
4. ____. Under Neb. Rev. Stat. § 29-4120(1)(b) (Reissue 2016), biologi-
   cal material does not fall within the purview of the DNA Testing Act
   unless it is in the actual or constructive possession or control of the State
   or others.
5. **Constitutional Law: DNA Testing.** A constitutional challenge to the
   destruction of evidence is outside the purview of the DNA Testing Act.

Appeal from the District Court for Madison County: MARK
A. JOHNSON, Judge. Affirmed.

Danielle L. Myers-Noelle, of Jewell & Collins, and Brad J.
Montag, of Egley, Fullner, Montag & Hockabout, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph
for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, and STACY, JJ.,
and MOORE, Chief Judge, and ARTERBURN, Judge, and DOYLE,
District Judge.

Stacy, J.

Rosario Betancourt-Garcia (Betancourt) was convicted in 2015 of kidnapping, use of a firearm to commit kidnapping, and conspiracy to commit kidnapping. We affirmed all of his convictions and two of his sentences on direct appeal.[1] In 2017, Betancourt filed a motion for forensic DNA testing pursuant to Nebraska's DNA Testing Act.[2] After conducting a hearing, the district court denied the motion, finding the items Betancourt wanted to test were no longer in the possession of the State and had been destroyed before the motion for DNA testing was filed.[3] Betancourt appeals, and we affirm.

## FACTS

### Background

On November 15, 2003, officers of the Madison Police Department responded to a call and found Pedro Jesus Rayon-Piza (Pedro) bound and gagged. Duct tape was wrapped around Pedro's face, ankles, and wrists.[4] A "'shoestring type cord'" was tied around his ankles and wrists. Pedro appeared "'terrified'" and told officers that Betancourt and another man had kidnapped him and threatened to kill him.[5] The two men left Pedro bound and gagged in a shed, telling him they were going to return with Pedro's brother and then kill them both. Pedro managed to escape and seek help before Betancourt and the other man returned.

The Madison Police Department conducted an immediate search for Betancourt, but did not find him. Two days later, arrest warrants were issued for Betancourt and the other suspect, and the State filed an information in county court,

---

[1] *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016).

[2] Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Reissue 2016).

[3] See § 29-4120(1)(b), (3), and (4).

[4] *State v. Betancourt-Garcia, supra* note 1, 295 Neb. at 176, 887 N.W.2d at 304.

[5] *Id.*

charging Betancourt with kidnapping and use of a deadly weapon to commit a felony.

Approximately 6 months later, in May 2004, Texas authorities arrested Betancourt in Plano, Texas, based on the Nebraska warrant. Betancourt signed a waiver of extradition, and the Madison County sheriff's office dispatched transport personnel to bring Betancourt back to Nebraska. While the transport personnel were en route to Texas, they learned Betancourt had mistakenly been transferred by authorities in Texas to the custody of federal "'immigration services.'"[6] Betancourt was subsequently deported to Mexico.

Roughly 9 years later, on July 1, 2013, Texas authorities arrested Betancourt again, and he was extradited to Nebraska. The case against Betancourt was bound over to district court, and the State ultimately filed an amended information charging Betancourt with kidnapping, use of a deadly weapon to commit a felony, and conspiracy to commit kidnapping. Betancourt pled not guilty to all three counts, and a jury trial was held.

At trial, Pedro testified that Betancourt was one of the two men who had kidnapped him, threatened to kill him, and left him bound and gagged in the shed. The other man involved in the kidnapping also testified at trial and admitted that he and Betancourt threatened Pedro with guns, took him to the shed, and left him there while they looked for Pedro's brother.

At trial, the court received without objection several photographs of the crime scene, including the shed from which Pedro had escaped. Some of the photographs depicted items in the shed, including a pair of black tennis shoes with white laces. There were also photographs of Pedro after the duct tape had been removed, and adhesive residue was visible on his face, wrists, and ankles. The police chief testified that some of the duct tape had been collected at the scene and kept in the evidence room for several years. But sometime prior to

---

[6] *Id.* at 174, 887 N.W.2d at 303.

Betancourt's rearrest in 2013, the mayor of Madison, Nebraska, wanted the evidence room cleaned, so officers checked to "verify where this case was" and then "disposed of" the physical evidence in Betancourt's case.

The jury convicted Betancourt on all charges. In December 2016, we affirmed his convictions on direct appeal, but remanded for resentencing on the conspiracy conviction.[7]

### Motion for DNA Testing

On February 27, 2017, Betancourt filed a motion for forensic DNA testing, seeking to have items of physical evidence, including the duct tape, the black tennis shoes, and the shoe laces, tested for DNA evidence. The motion alleged Pedro had falsely, or mistakenly, identified Betancourt as the perpetrator and further alleged that DNA testing could result in exculpatory evidence if Betancourt's DNA was not found on any of the physical evidence.

The district court held a hearing on the motion June 16, 2017. Both the police chief for the city of Madison and a deputy sheriff for Madison County testified that the physical evidence related to Betancourt's case had been destroyed before trial.

The police chief testified that sometime in 2010, he destroyed all the physical evidence related to Betancourt's case as part of an initiative to clean out the evidence locker and get rid of evidence from "old cases." At the time the evidence was destroyed, Betancourt had been deported, the charges against him had been pending for 7 years, and his whereabouts were unknown. According to the police chief, the destruction of evidence was not done to frustrate Betancourt's defense.

The deputy sheriff testified that after Betancourt was rearrested in 2013 and extradited to Nebraska, he attempted to locate the physical evidence related to Betancourt's case. He located a compact disc that contained various photographs

---

[7] *State v. Betancourt-Garcia, supra* note 1.

of the physical evidence, but otherwise determined the physical evidence had been destroyed. Like the police chief, he testified that the evidence was not destroyed in an effort to harm or frustrate Betancourt's defense.

During the evidentiary hearing on Betancourt's motion for DNA testing, Betancourt argued, among other things, that his due process rights had been violated by the State's destruction of the evidence. The district court asked Betancourt why due process was a relevant issue under the DNA Testing Act, but Betancourt did not directly answer that question. At the end of the hearing, the court announced from the bench that it was basing its decision on "the evidence and the narrow scope of the statute regarding DNA testing." It overruled the motion for DNA testing, finding that the physical evidence Betancourt wanted to test had been destroyed before the motion for testing had been filed. Betancourt filed this timely appeal.

## ASSIGNMENTS OF ERROR

Betancourt assigns the district court erred in finding the State did not destroy evidence in bad faith and in violation of his due process rights under the U.S. Constitution.

## STANDARD OF REVIEW

[1,2] A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[8] An appellate court will uphold a trial court's findings of fact related to a motion for DNA testing unless such findings are clearly erroneous.[9]

## ANALYSIS

### DNA TESTING ACT

[3] Nebraska enacted the DNA Testing Act in 2001. It is a limited remedy providing inmates an opportunity to obtain

[8] *State v. Robbins*, 297 Neb. 503, 900 N.W.2d 745 (2017).

[9] See *id*.

DNA testing in order to establish innocence after a conviction.[10] Pursuant to the act, a person in custody takes the first step toward obtaining possible relief by filing a motion in the court that entered the judgment requesting forensic DNA testing of biological material.[11] The type of biological material subject to testing under the act is identified in § 29-4120(1). A person in custody can only request forensic DNA testing of biological material that

(a) Is related to the investigation or prosecution that resulted in such judgment;

(b) Is in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition; and

(c) Was not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more accurate and probative results.[12]

Here, Betancourt's motion identified the following material he wanted to have tested: two black shoes with white laces, two pieces of duct tape, two pieces of "shoe lace type cord," saliva from the duct tape, and all clothing of Pedro taken into evidence. The motion did not indicate that the evidence at issue had been destroyed before trial. To the contrary, the motion specifically stated that "police reports show this evidence still exist[s] in Madison County." The motion also alleged that the evidence had been "collected by law enforcement as part of the investig[a]tion" and had "remained in State custody ever since."

Under the DNA Testing Act, notice of a motion seeking forensic DNA testing must be served on the county attorney of

---

[10] See, § 29-4117; *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014).

[11] *State v. Pratt, supra* note 10.

[12] § 29-4120(1).

the county in which the prosecution was held.[13] Upon receiving notice, the county attorney must take steps to ensure that any "remaining biological material that was secured by the state or a political subdivision in connection with the case" is preserved pending completion of any proceedings under the act.[14] The county attorney also is required to submit an inventory of all evidence that was secured by the State or a political subdivision in connection with the case.[15] If evidence is intentionally destroyed after notice of a motion for DNA testing is received, a court may impose appropriate sanctions, including criminal contempt.[16] The record before us does not contain the inventory of evidence prepared by the county attorney, but neither party suggests there was a failure to submit such a document in response to Betancourt's motion.

Under the DNA Testing Act, the court has discretion to either consider the motion on affidavits or hold a hearing,[17] after which it "shall order DNA testing" upon a determination that

> (a)(i) the biological material was not previously subjected to DNA testing or (ii) the biological material was tested previously, but current technology could provide a reasonable likelihood of more accurate and probative results, (b) the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and (c) such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced.[18]

In this case, the district court held a hearing, and the uncontroverted testimony established that the biological material

---

[13] § 29-4120(2).

[14] § 29-4120(3).

[15] § 29-4120(4).

[16] *Id.*

[17] § 29-4120(5).

[18] *Id.*

Betancourt wanted to have tested was not in the actual or constructive possession or control of the state when Betancourt filed his motion. The police chief had disposed of the material while cleaning out the evidence room several years before Betancourt's convictions, and at a point in time when Betancourt was absconded from Nebraska and not incarcerated in connection with this case.

Based on this evidence, we find no error in the district court's factual findings that the biological material Betancourt wanted tested no longer existed and the related finding that no evidence had been destroyed after Betancourt's motion was filed. And given these factual findings, we find no abuse of discretion in denying relief under the DNA Testing Act.

[4] At the time Betancourt filed his motion, the material sought to be tested did not fall within the purview of the DNA Testing Act, because it was not in the actual or constructive possession or control of the State or others, as required by § 29-4120(1)(b). And although the DNA Testing Act provides that "state agencies and political subdivisions shall preserve any biological material secured in connection with a criminal case for such period of time as any person remains incarcerated in connection with that case,"[19] the evidence was uncontroverted that the biological material at issue was destroyed before Betancourt's trial and convictions and during a time period in which Betancourt was absconded from Nebraska and not incarcerated in connection with the case.

The district court correctly overruled Betancourt's motion for DNA testing. To the extent Betancourt assigns error to the contrary, the assignment is without merit.

## Due Process Claim

Betancourt assigns and argues on appeal that the evidence destroyed before his trial was "materially exculpatory"[20] and

_____

[19] § 29-4125(1).

[20] Brief for appellant at 11.

that therefore, the State's destruction of it violated his right to due process of law.[21] The district court's ruling did not address Betancourt's due process argument, and for good reason. It was not properly before the court.

[5] Betancourt limited his motion to requesting DNA testing under the DNA Testing Act. His motion did not challenge the destruction of evidence at all and, instead, affirmatively alleged the evidence he wanted tested was still in the State's custody. The motion did not raise any sort of constitutional due process challenge based on the destruction of evidence. And in any event, a constitutional challenge to the destruction of evidence is outside the purview of the DNA Testing Act. On this record, the district court correctly declined to address Betancourt's due process arguments.

## CONCLUSION

For the foregoing reasons, the order of the district court overruling the motion for DNA testing is affirmed.

AFFIRMED.

WRIGHT and FUNKE, JJ., not participating.

---

[21] See *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).