Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/13/2020 08:07 AM CDT

State of Nebraska, appellee, v.
Arlyn P. Ildefonso, appellant.

___ N.W.2d ___

Filed December 20, 2019.    No. S-19-060.

1. **DNA Testing: Appeal and Error.** A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.
2. ____: ____. An appellate court will uphold a trial court's findings of fact related to a motion for DNA testing unless such findings are clearly erroneous.
3. ____: ____. Decisions regarding appointment of counsel under the DNA Testing Act are reviewed for an abuse of discretion.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Arlyn P. Ildefonso, pro se.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Cassel, J.

## INTRODUCTION

Arlyn P. Ildefonso appeals from the denial of his motions for DNA testing and appointment of counsel. Because Ildefonso failed to demonstrate that DNA testing may produce noncumulative, exculpatory evidence, the district court did not abuse its discretion by denying his motions. We affirm.

## BACKGROUND

### Circumstances of Crimes

On September 13, 1999, Carr Hume's body was found lying partially on a sidewalk and partially on a curb in front of a house in the area of 42d and Bancroft Streets in Omaha, Nebraska. Blood spatter evidence indicated that he had been shot at that location. Hume died from a single gunshot wound to the head. No shell casings were found at the scene. Items located at the scene included a baseball hat, assumed to belong to Hume; a piece of possible human tissue near a curb across from Hume's body; and a syringe in the street.

Christina Devore-Alexander testified that she was with Ildefonso and Kristine Reh late in the evening on September 12, 1999, and into the early morning hours of September 13. They left an apartment around 3 a.m., with Devore-Alexander driving and Ildefonso giving directions. According to Devore-Alexander, while she was driving, Ildefonso was "very upset" and said the only thing that would make him feel better was "if he shot somebody." Near 42d and Bancroft Streets, Devore-Alexander stopped the car and Ildefonso got out. As Devore-Alexander was talking to Reh, she heard a gunshot and looked up. She saw Ildefonso's extended arm holding a gun and Hume lying on his back on the ground. Reh testified that once the car stopped on 42d Street, Ildefonso got out, Reh heard a gunshot, and then Ildefonso got back in the car. As the vehicle drove away, Reh saw a man lying on the sidewalk.

On approximately September 24, 1999, Mark Anderson told police that he had been with the individuals responsible for the shooting. At that time, Anderson was in police custody due to his suspected involvement in an automobile theft. Based on information from Anderson, police identified Randall Fields and Shannon Smith as possible suspects. Anderson told officers that Fields shoved Hume, produced a handgun, and fired two times, striking Hume with the second

shot. Police arrested Fields and Smith and brought them into custody.

As an officer was preparing to interview Fields, the officer received a call from Amy Taylor, who said that she knew who the shooter was and that the wrong people had been arrested. The officer testified that Taylor told him Ildefonso used a .357-caliber revolver during the shooting and that he was with Devore-Alexander and Reh. The officer asked Taylor to obtain some of the bullets for the gun.

Taylor testified that she called the police after seeing on television that the wrong people had been arrested for Hume's murder. Taylor had been staying with Ildefonso in a motel. She testified that Ildefonso told her that he shot Hume "[b]ecause he was mad and he wanted the world to feel his pain." She had seen Ildefonso with several firearms, including a .357-caliber revolver. At the request of the police, Taylor obtained shells from the .357-caliber revolver from Ildefonso's backpack and gave them to the motel clerk for the police to retrieve. Taylor testified that it was "possible" Fields—whom she last saw 4 years earlier—was the father of one of her children.

After speaking with Devore-Alexander, Reh, and Taylor, officers reinterviewed Anderson. Anderson said that he used news accounts of the murder to concoct the story against Fields and Smith for revenge. An officer testified that in retrospect, parts of Anderson's original stories to the police were not consistent with what the officers learned. After Anderson recanted, he was charged with a crime for delaying the actual suspect from being apprehended.

On October 1, 1999, police took steps to obtain a warrant to search Ildefonso, a vehicle, and a motel room. While surveilling the motel, an officer saw Ildefonso and Taylor leave the motel in a vehicle. Officers subsequently stopped the vehicle. Taylor testified that when pulled over by the police, Ildefonso removed the .357-caliber revolver from his waistband and put it under the front passenger's seat of the vehicle. Police collected the revolver as evidence.

During an autopsy of Hume, a doctor recovered a bullet and bullet fragments from the right side of the base of the skull. An expert testified that the bullet taken from Hume's head was fired from the .357-caliber revolver recovered from under the front passenger's seat of the vehicle in which Ildefonso was seated.

A jury convicted Ildefonso of murder in the first degree and use of a deadly weapon to commit a felony. We affirmed his convictions on direct appeal.[1]

## Motion for DNA Testing

In 2018, Ildefonso filed a motion for DNA testing. He identified 12 items/groups of items, including clothing collected from Hume, the hat, the possible piece of human tissue, the syringe, blood swabs, forensic evidence from a Mitsubishi automobile, personal clothing from other individuals (Anderson, Fields, and Smith), bullets or shell casings, firearms, other live or spent ammunition collected from Ildefonso, and Ildefonso's backpack. Ildefonso then set forth claims of actual innocence, wrongful conviction, and violations of his constitutional rights. He theorizes that Taylor set him up to "free her child[']s father," and his motion points to alleged inconsistencies in the testimonies of various trial witnesses. As relevant to DNA testing, Ildefonso lists a series of questions:

> Was the hat found near . . . Hume ever tested for DNA? Does the hat belong to Fields, Smith, Anderson or some other perp[e]trator who was with Anderson that night? Was the syringe and "tissue like substance" tested for DNA? Who do they belong to? Anderson said that Fields shoved . . . Hume prior to shooting him. Were . . . Hume's clothes tested for DNA to see if there is anyone else's DNA on them? Was the stolen Mitsubishi car that Anderson said was used during this crime, ever processed

---

[1] See *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001).

for forensic evidence? Was . . . Hume's, Field's, Smith's, Anderson's, or anyone else's DNA located in there? Fingerprints, hair, blood, or anything? Was any search warrants done on Fields, Smith, or Anderson to look for the clothing that Anderson said that they were wearing that night? Was it found? Was . . . Hume[']s DNA or blood on any of them?

In the motion, Ildefonso requested that counsel be appointed to represent him. He subsequently filed a separate motion for appointment of counsel.

After the State filed an index of property, the court entered an order concerning Ildefonso's motion. The court recognized that most of the motion and affidavit reasserted claims raised in Ildefonso's motion for postconviction relief and were irrelevant to issues of DNA testing. Because Ildefonso did not indicate why testing of the various items may present exculpatory evidence, the court allowed him time to file a supplemental affidavit.

Ildefonso then filed a supplemental affidavit. He alleged that Anderson was an eyewitness to and participant in Hume's death and that Anderson said a man shoved Hume before shooting him. Thus, Ildefonso claimed that there might have been a DNA transfer from the killer's hands onto Hume's clothes. And because the hat located near Hume's body was not found conclusively to be Hume's hat, Ildefonso posited that the hat may belong to a person involved in the crime. He believed DNA evidence left by the actual killer would be located on the items.

## DISTRICT COURT'S DECISION

The district court determined that Ildefonso failed to show such testing may produce noncumulative, exculpatory evidence relevant to the claim that he was wrongfully convicted. The court noted that Ildefonso's supplemental affidavit relied on Anderson's statements, even though Anderson admitted fabricating his story. The court stated that Ildefonso "does not

indicate with any particularity, or truthful corroborating evidence, why testing of those items may present any exculpatory evidence relative to the claim that the defendant was wrongfully convicted—only hopeful conclusions." The court denied Ildefonso's motion for appointment of counsel and motion for DNA testing.

Ildefonso filed a timely appeal.

## ASSIGNMENT OF ERROR

Ildefonso assigns that the district court erred when it failed to follow the DNA Testing Act[2] and order DNA testing on specific items and, thereafter, to follow the act's protocol, including the appointment of counsel, the conducting of a full factfinding hearing, and the making of a judicial decision based on all information germane to the case.

## STANDARD OF REVIEW

[1,2] A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[3] An appellate court will uphold a trial court's findings of fact related to a motion for DNA testing unless such findings are clearly erroneous.[4]

[3] Decisions regarding appointment of counsel under the DNA Testing Act are reviewed for an abuse of discretion.[5]

## ANALYSIS

### DNA Testing Act

Pursuant to the act, a person in custody takes the first step toward obtaining possible relief by filing a motion in the court that entered the judgment requesting forensic DNA

---

[2] Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Reissue 2016).

[3] *State v. Myers*, 301 Neb. 756, 919 N.W.2d 893 (2018).

[4] *Id.*

[5] *Id.*

testing of biological material.[6] The court has discretion to either consider the motion on affidavits or hold a hearing.[7] Under § 29-4120(5), the court shall order DNA testing upon a determination that

> (a)(i) the biological material was not previously subjected to DNA testing or (ii) the biological material was tested previously, but current technology could provide a reasonable likelihood of more accurate and probative results, (b) the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and (c) such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced.

Under the act, "exculpatory evidence means evidence which is favorable to the person in custody and material to the issue of the guilt of the person in custody."[8]

## Denial of Motion
### for DNA Testing

Part of the defendant's burden of proof is to provide the court with affidavits or evidence at a hearing establishing the three required factual determinations under § 29-4120(5).[9] We have recognized that the showing needed to satisfy the requirement that DNA testing may produce noncumulative, exculpatory evidence is "relatively undemanding . . . and will generally preclude testing only where the evidence at issue would have no bearing on the guilt or culpability of the movant."[10] Although the threshold to obtain DNA testing is rather low, we

---

[6] *State v. Betancourt-Garcia*, 299 Neb. 775, 910 N.W.2d 164 (2018).

[7] *Id.*

[8] § 29-4119.

[9] See *State v. Young*, 287 Neb. 749, 844 N.W.2d 304 (2014).

[10] *State v. Buckman*, 267 Neb. 505, 515, 675 N.W.2d 372, 381 (2004).

agree with the district court that Ildefonso did not meet this minimal threshold.

A court is not required to order DNA testing if such testing would not produce exculpatory evidence. In *State v. Dean*,[11] we reasoned that "even if [the prisoner] is correct and DNA testing would not detect the presence of his DNA on the objects in question, the result would be at best inconclusive, and certainly not exculpatory." The same is true here. Ildefonso asserts that his DNA will not appear on any of the items. But the absence of his DNA on some of the items would be consistent with the evidence and would not be exculpatory, particularly in light of the testimonies of Devore-Alexander, Reh, and Taylor and Ildefonso's possession of the murder weapon at the time of his apprehension.

Ildefonso essentially seeks DNA testing to corroborate Anderson's original story. Ildefonso maintains that he was framed for the murder, and he argues that testing showing the DNA of Anderson, Fields, or Smith would raise serious doubts regarding the credibility of Devore-Alexander, Reh, and Taylor. One problem for Ildefonso is that the State's index of property does not show that the State has actual or constructive possession of a DNA sample of Anderson, Fields, or Smith with which to compare any testing results. Another problem is that Anderson recanted his story—parts of which police determined were not credible or were not consistent with the evidence—and was charged with a crime for his false report. An admittedly fabricated story does not provide a basis for DNA testing.

We find no error in the district court's factual findings that the evidence Ildefonso desired to have tested would not produce exculpatory evidence. Thus, we find no abuse of discretion by the court in denying Ildefonso's motion for DNA testing.

---

[11] *State v. Dean*, 270 Neb. 972, 976, 708 N.W.2d 640, 644 (2006).

Appointment of Counsel

A court shall appoint counsel for an indigent person upon a showing that DNA testing may be relevant to the person's claim of wrongful conviction.[12] Here, Ildefonso did not make the requisite showing that DNA testing may be relevant to his claim of wrongful conviction. Accordingly, the court did not abuse its discretion in refusing Ildefonso's request for appointment of counsel.

CONCLUSION

Because Ildefonso did not meet his burden of showing that DNA testing may produce noncumulative, exculpatory evidence relevant to his claim that he was wrongfully convicted, we conclude that the district court did not abuse its discretion in denying Ildefonso's motions for DNA testing and appointment of counsel.

AFFIRMED.

FREUDENBERG, J., not participating.

---

[12] § 29-4122.