PERRY TAYLOR V. STATE OF NEBRASKA.
292 N. W. 233
FILED MAY 24, 1940.   No. 30890.

*E. A. Houston, E. T. Houston* and *Arthur L. Burbridge,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

The defendant was convicted by a jury of cattle stealing in Knox county at the October, 1939, term, and by a proceeding in error brings his conviction and sentence of three years to the penitentiary to this court for review.

Among the errors relied upon for reversal are: That the verdict is not sustained by the evidence; the alleged error of the court in overruling motion for an instructed verdict at the conclusion of the state's evidence, and also at the conclusion of all the evidence; that the court erred in giving instruction No. 8, in which the jury were instructed that the defendant admitted taking the cattle described in the information; and, last, for errors in the admission of incompetent and immaterial exhibits in evidence.

The amended information, filed October 21, 1939, recites

that the defendant on October 3, 1930, did wilfully, unlawfully and feloniously steal four heifers of the value of $145, which were the property of Adam Stoural, against the will of the owner and contrary to the statutes, and that on or about October 7, 1930, the defendant did leave his place of residence in Knox county, and did flee from justice and conceal himself to avoid detection and prosecution for the aforesaid offense, and returned to the state about June 26, 1939.

The evidence discloses that the defendant, then about 26 years of age and a single man, resided on a farm with his father and sister, and in the pasture there were cattle belonging to his father and to his brother, and in an adjoining pasture there were cattle belonging to the complaining witness, Adam Stoural, and also cattle belonging to others.

The evidence discloses that the defendant was not a cattleman, but rather a farmer, although he owned a few sheep, and that, his father being in ill health, the defendant did all of the work on the farm, his sister helping pick corn, and the evidence indicates that he was not very familiar with the cattle belonging either to his father or his brother, as he did not take care of them.

The defendant testified, and called more than a dozen witnesses in his own behalf. His counsel and witnesses were provided by the state upon a poverty affidavit. The testimony of the defendant was that his father looked after the live stock. His brother, Bert Taylor, lived northeast of Verdigre on the Bigelow place, less than ten miles from the South Dakota line, and had made arrangements to move to South Dakota, and asked the defendant, in the presence of his wife and Amil Klippham, to sell his cattle, as he wanted to make a payment on his tractor, which was mortgaged, so that he could move it out of the state. Defendant went to Creighton and employed Frank Kimble, a trucker, to take the load of cattle to Sioux City. He went home and drove some eight head of cattle into the barn that Friday afternoon, and the trucker came about 5:30 to 6:00 and loaded up seven white-face two-year-olds and one white calf, all

of which the defendant thought belonged to his brother, and the trucker drove the load to the stockyards at Sioux City. The defendant drove over the next morning, and the cattle were sold, and the defendant drew $50 in cash from the commission firm of Hudson & Gibbs, and told them to mail him a check for the balance to Verdigre. When the check arrived defendant indorsed it, and told his sister to cash it, as he was going over to Holt county to buy some sheep. When he returned about three days later, he was told that he had gotten some wrong cattle, and the sister gave back the money to the banker which she had received on the check, and Frank Molle told him he "got some wrong cattle out there."

Defendant testified that this occurred on October 3, 1930, and that he continued his usual work, and husked corn around the neighborhood. About the middle of January, 1931, defendant left for Missouri. He said an officer was out at his place once, but not to arrest him; that he came back from Missouri in 1934 to attend the funeral of his sister's child, and that in 1936 he came back on business. He swore that he never intended to take any of the cattle belonging to the complaining witness, and that it was all a mistake.

Frank Kimble, the trucker, was called as a witness for the state, and said that he remembered that in the fall of the year 1930 he trucked a load of cattle from a barn on the Horton ranch (which ranch was rented by the defendant's father) to Sioux City; that they were loaded up about 5:30 or 6 o'clock in the evening, and that he took them to Sioux City, consigned to Hudson & Gibbs, as directed by the men who loaded them up. He said there were one or two children playing in the yard, and that the shipping tag was made out in the name of Perry Taylor; that he arrived at the stockyards about midnight, and that the next morning when they were sold he drew his money from Hudson & Gibbs for trucking them. He was not able to identify the defendant as the Perry Taylor who hired him or signed the ticket. He said that the defendant was about the same height, but was

not as heavy a man as the one who was out there with him about nine years before.

Much is made of the fact that no one saw the defendant bring in the cattle from the adjoining pasture to the Horton ranch. The trucker who took them did not identify the defendant, but the defendant, by taking the stand in his own behalf, cleared up all question of his identity, and rested his defense on a lack of any intention to steal the cattle, and the four cattle charged in the information were loaded by a mistake pure and simple, as he thought they belonged to his brother, and the defense argued strongly in his behalf was that he never had any intimation that the officers wanted him; that he knew of no complaint made against him, and then he went to Joplin, Missouri, and has lived with his sister, Mrs. Vina Siders, since then, but returned twice, meeting many people on these trips, and that he had no idea that he was considered a fugitive from justice, and that the statute of limitations had run against the offense.

The evidence of the state was that the cattle were missed almost immediately, and it was found that the fence between the Horton ranch, occupied by the defendant's father, and the Elbrook pasture adjoining had been let down, and the tracks of cattle showed where they had been driven through, and the fence between the Elbrook pasture and the Schienost pasture, where the Stoural cattle were, had also been let down, and the fences had been put back up, using nails to fasten the wires to the posts instead of staples. The tracks of cattle led toward the barn where the defendant admitted loading the cattle. Immediately after learning these facts, the owner of the cattle went to Sioux City, and found the cattle and positively identified them. There was one heifer in the lot that was a pet, and one had a crooked horn, which was injured in a dehorning operation, and the others were identified. Each of these animals, except the white sucking calf, had a "V" cut mark in the lower right ear, and a "T. B." tag in the upper right ear to show that they had been vaccinated for tuberculosis, and all of these "T. B." tags had been torn out recently, for the blood clots

were still there. The owner took the cattle from Sioux City back to their pasture.

The state claims that the defendant did not satisfactorily account for his leaving the country, or for his remaining in Missouri. This question was put to the jury in instruction No. 6, which read as follows: "It is charged by the information in this case that the defendant did on or about the 7th day of October, 1930, leave his place of residence in Knox county, Nebraska, and did flee from justice and concealed himself to avoid detection and prosecution for the offense charged in the amended information until the 26th day of June, 1939. You are instructed that this charge is a material element in this case and before the defendant could be found guilty of the offense charged in the amended information the state must prove from the evidence and beyond a reasonable doubt that the defendant did flee from justice and conceal himself to avoid detection and prosecution for this offense in the manner and during the period stated in the amended information. You are instructed that the words 'Fleeing from justice' as used in the law of Nebraska, implies a departure by a person from his usual place of abode, or from the place where he has committed an offense, with the intent to avoid detection and prosecution for such public offense. You will first consider this question and if the state has failed to prove from the evidence beyond a reasonable doubt that the defendant was a fugitive from justice during the period above stated and did flee from justice and conceal himself to avoid detection and prosecution for this offense, then it would be your duty without going further into the evidence to find the defendant not guilty. If, however, you do find from the evidence and beyond a reasonable doubt that the defendant was a fugitive from justice and did flee from justice and conceal himself to avoid detection and prosecution for the offense charged, as alleged in said amended information, then you shall further consider all of the evidence in the case and determine the guilt or innocence of the defendant upon the general charge of cattle stealing."

This question of being a fugitive from justice is clearly a question of fact for the jury. Section 29-110, Comp. St. 1929, provides for a limitation of three years within which such a prosecution must be begun, by filing an information, or having an indictment returned by the grand jury, which limitation, however, does not apply in case any person flees from justice. It is said that such statutes of limitation are to be liberally construed in favor of the defendant. *Hogoboom v. State,* 120 Neb. 525, 234 N. W. 422.

In *Colling v. State,* 116 Neb. 308, 217 N. W. 87, it was said that fleeing from justice implies a departure from his usual place of abode, or from the place where he has committed an offense, with the intent to avoid detection or prosecution for a public offense. In this case it was held that the term "fugitive from justice," as used in statutes pertaining to extradition, is not synonymous with the term "fleeing from justice," as used in the statute of limitations (Comp. St. 1929, sec. 29-110) ; that the term "fugitive from justice," as used in statutes pertaining to extradition, applies when he has gone from the jurisdiction where the offense was committed. The term "fleeing from justice," as used in the statute of limitations, is correctly defined in instruction No. 6 as set out above. In 6 Neb. Law Bulletin, 423, the distinction drawn by our court is discussed. See, also, 10 Neb. Law Bulletin, 337.

It seems to the court that the question of whether the defendant was fleeing from justice when he went to Missouri, not on October 7, 1930, as charged in the amended information, but something over three months after the cattle were taken, the conditions under which he remained in Missouri, the two very hurried visits that he made up to his old home, and his final arrest, were all submitted to the jury under a very complete and satisfactory instruction, which made it clear to the jury that the first question they were to consider was the one of whether the defendant had been a fugitive from justice during the nine-year period, and without going any further into the evidence they could find him not guilty if they were not satisfied beyond a reasonable

doubt that he was a fugitive from justice, and while this court on this evidence might entertain some doubts on this question, yet the credibility of all these witnesses, especially of the defendant himself, and the weight to be given to the testimony of each of them resting with the jury, this court feels bound to abide by the verdict which they returned.

On the question of the felonious intent which must be shown in such a case, the evidence of the defendant himself shows an entire absence of any intent at all to steal these cattle, and that it was a case of mistaken identity pure and simple as to the cattle he gathered up and shipped to Sioux City, but the jury had also before it many other facts and circumstances, such as the taking down of the fences, the driving of the cattle out of the pasture they were in, then through another pasture, and then into the pasture of the defendant's father, and driving them into the barn, and the fact that some one vitally interested in the matter removed all of the identifying tags from the ears of the animals by tearing them out. These facts, together with other circumstantial evidence, would be sufficient, if believed by the jury, and found to be entirely unexplained by the testimony of the defendant, to satisfy the jury of the felonious intent alleged in the case.

This case, by reason of the delay of nine years in the prosecution, and by reason of other facts and circumstances, presents several very close questions to this court, but criminal cases are for the jury, and we are supported by section 29-2308, Comp. St. 1929, which says that no judgment rendered in a criminal case shall be set aside for certain errors if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred, and the jury having passed upon these close questions, under proper instructions given by an experienced trial judge, we have reached the conclusion that the verdict and sentence should be affirmed.

AFFIRMED.