Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/25/2022 09:08 AM CST

STATE OF NEBRASKA, APPELLEE, V. ROSARIO
BETANCOURT-GARCIA, APPELLANT.

___ N.W.2d ___

Filed December 3, 2021.    No. S-20-538.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Effectiveness of Counsel: Appeal and Error.** Claims of ineffective assistance of counsel involve mixed questions of law and fact.

3. ____: ____. When reviewing claims of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error and the legal determinations de novo.

4. **Postconviction: Final Orders: Appeal and Error.** Within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without a hearing. Such an order is appealable because as to the denied claim, it is a "final judgment" under Neb. Rev. Stat. § 29-3002 (Reissue 2016).

5. **Postconviction: Constitutional Law: Proof.** A defendant seeking relief under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016), must show that his or her conviction was obtained in violation of his or her constitutional rights.

6. **Postconviction: Appeal and Error.** Postconviction relief is a narrow category of relief and is not intended to secure a routine review for any defendant dissatisfied with his or her sentence.

7. ____: ____. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal.

8. **Postconviction: Constitutional Law: Judgments: Proof.** An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved,

constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.

9. **Postconviction: Proof.** An evidentiary hearing on a motion for postconviction relief is not required if (1) the motion does not contain factual allegations of a violation or infringement of the prisoner's constitutional rights, (2) the motion alleges only conclusions of fact or law, or (3) the record affirmatively shows that the prisoner is entitled to no relief.

10. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

11. **Postconviction: Effectiveness of Counsel: Proof.** If the petitioner has not alleged facts which would support a claim of ineffective assistance of counsel or if the files and records affirmatively show he or she is entitled to no relief, then no evidentiary hearing is necessary.

12. **Effectiveness of Counsel: Proof.** To prevail under a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant must first show that his or her attorney's performance was deficient, meaning it objectively did not equal that of a lawyer with ordinary training and skill in criminal law.

13. ____: ____. To show that defense counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

14. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

15. **Criminal Law: Weapons.** The operability of a handgun is not relevant to whether it is a firearm used under Neb. Rev. Stat. § 28-1205(1)(a) (Reissue 2008).

16. **Criminal Law: Statutes: Legislature.** Under Nebraska law, all crimes are statutory and no act is criminal unless the Legislature has in express terms declared it to be so.

17. **Constitutional Law: Effectiveness of Counsel: Conflict of Interest: Words and Phrases.** An actual conflict of interest for Sixth Amendment purposes is defined broadly. The phrase "actual conflict of interest" encompasses any situation in which a defense counsel faces divided loyalties such that regard for one duty tends to lead to disregard of another.

18. **Effectiveness of Counsel: Conflict of Interest.** An actual conflict of interest for Sixth Amendment purposes is one that adversely affects counsel's performance.

19. **Criminal Law: Conspiracy: Intent: Proof.** With respect to proving the intent element of a conspiracy, direct evidence of a positive agreement to jointly participate in the violation of a criminal statute is not required to establish a crime.

20. ____: ____: ____: ____. A criminal conspiracy must necessarily be entered into with the intent to defraud the State or to violate a criminal law, and intent being a matter of the mind, it is rarely possible to prove that element of the crime except by circumstances.

21. **Criminal Law: Conspiracy.** Conspiracy may be charged in both the place of the agreement, as well as any locale where any overt act by any one of the conspirators took place.

Appeal from the District Court for Madison County: MARK A. JOHNSON, Judge. Affirmed in part, and in part reversed and remanded with direction.

Brad J. Montag, of Egley, Fullner, Montag, Morland & Easland, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, and PAPIK, JJ., and HARDER and MASTELLER, District Judges.

MILLER-LERMAN, J.
## I. NATURE OF CASE
Rosario Betancourt-Garcia (Betancourt), who is serving sentences of imprisonment for his convictions for kidnapping, use of a firearm to commit a felony, and conspiracy to commit kidnapping, filed a petition for postconviction relief. The district court for Madison County granted an evidentiary hearing on three of Betancourt's claims and denied the balance of Betancourt's petition without an evidentiary hearing. Betancourt appeals. He claims on appeal that he was entitled to an evidentiary hearing generally concerning several layered claims of ineffective assistance of appellate counsel, related to,

inter alia, the handling of lost or destroyed evidence, potential plea offers, translation discrepancies, witness investigations, and a sentencing error. Because Betancourt alleged ineffective assistance of counsel for failing to object on remand to the unauthorized sentence of "life imprisonment without parole" on the conspiracy conviction, we remand this cause to the district court for a hearing. With respect to the remaining claims, because Betancourt failed to allege facts that show he was entitled to relief, or the record or law refute his claims, we affirm the judgment of the district court.

## II. STATEMENT OF FACTS

The facts surrounding Betancourt's convictions are set forth in our opinion in *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016) (*Betancourt I*), *abrogated on other grounds, State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). See, also, *State v. Betancourt-Garcia*, 299 Neb. 775, 910 N.W.2d 160 (2018) (*Betancourt II*). The evidence at trial reflected that Betancourt and Leonel Torres-Garcia (Torres) kidnapped Betancourt's nephew, Pedro Jesus Rayon-Piza (Pedro), bound him, gagged him, threatened him with a gun, and placed him in a shed. The State's theory was that Betancourt believed that Pedro or his brother Jose Rayon-Piza (Jose) knew the whereabouts of Betancourt's wife, Gabriela Ortiz, from whom Betancourt was separated. Betancourt believed that Jose was "going out" with Ortiz. Pedro testified that Betancourt told him that he was going to leave him there, bring Jose to the same location, and kill them both. Pedro, still bound, managed to stand, exit the open door of the shed, and jump to the nearest house, evidently where Paula Chadwick and Bob Chadwick lived and where officers found Pedro. Torres also testified that he and Betancourt had kidnapped Pedro.

In 2015, following a jury trial, Betancourt was convicted of count I, kidnapping, a Class IA felony, for which he was originally sentenced to a term of life imprisonment; count II, use of a firearm to commit a felony, a Class IC felony, for which he was originally sentenced to a term of 10 to 30 years'

imprisonment, including a mandatory minimum of 5 years' imprisonment; and count III, conspiracy to commit kidnapping, a Class II felony, for which he was originally sentenced to a term of 30 to 50 years' imprisonment. The sentences for kidnapping and conspiracy were to be served concurrently, and the sentence for use of a firearm was to be served consecutively thereto.

Prior to trial, Betancourt was variously represented by the Madison County public defender and, subsequently, by private counsel. Through trial and sentencing, Betancourt was again represented by the Madison County public defender's office, through a different public defender and a deputy public defender. Betancourt had different counsel for his direct appeal and subsequent resentencing and still other counsel in *Betancourt II*, one of whom continues to represent Betancourt in this postconviction proceeding.

On the direct appeal, we affirmed the convictions and affirmed the sentence in part and remanded the sentence in part for resentencing on the conspiracy count to impose a life sentence rather than a range of years. *Betancourt I, supra*. On January 27, 2017, without objection, Betancourt was resentenced on his conspiracy conviction "to life imprisonment without parole."

On February 27, 2017, Betancourt filed a motion for forensic DNA testing seeking to have certain items of physical evidence, including duct tape, tennis shoes, and shoelaces, tested for DNA evidence. The record showed that the evidence had been destroyed prior to the filing of the motion. Although originally arrested in 2004, Betancourt was deported and rearrested in 2013. At the time the evidence was destroyed in 2010, Betancourt had been deported, his whereabouts were unknown, and the charges against him had been pending for 7 years. Following a hearing, the district court overruled Betancourt's motion for DNA testing. Because the material sought to be tested was not in the actual or constructive control of the State or others as required by Neb. Rev. Stat. § 29-4120(1)(b)

(Reissue 2016), we affirmed the district court's order. See *Betancourt II, supra*.

On October 19, 2017, Betancourt filed a verified petition for postconviction relief. Following a records hearing on the operative postconviction motion, the district court granted an evidentiary hearing on three of Betancourt's claims, including his claim that appellate counsel failed to raise the issue of the trial counsel's failure to explore an alibi defense; the choice to pursue a misidentification defense; and the failure to object to Betancourt's invalid sentence for count II, which should not have included a mandatory minimum. The district court denied Betancourt's remaining claims without an evidentiary hearing. The district court found, with respect to the unsuccessful claims addressed in the order, they either were insufficiently alleged, were affirmatively refuted by evidence in the record, or were not examples of ineffective assistance of trial and/or appellate counsel.

Betancourt appeals.

## III. ASSIGNMENTS OF ERROR

Betancourt assigns, summarized and restated, that the district court erred when it denied him an evidentiary hearing generally on the issues of (1) lost or destroyed evidence, (2) ineffective assistance of appellate counsel for failing to raise the trial counsel's ineffectiveness ensuring Betancourt understood a plea offer, and (3) other claims of ineffective assistance of appellate counsel. The other claims of ineffectiveness of appellate counsel generally relate to failing to raise trial counsel's ineffectiveness for the following:

• Claim 3(a), not moving to quash counts I (kidnapping) and II (use of a firearm to commit a felony) of the information based on the statute of limitations;

• Claim 3(b), not moving to quash and/or dismiss count II (use of a firearm to commit a felony);

• Claim 3(c), not objecting to hearsay testimony at a preliminary hearing;

• Claim 3(d), not securing a different translator;

- Claim 3(e), operating under a conflict of interest within the Madison County public defender's office;
- Claim 3(f), not calling Ernest Nino-Mucia to testify regarding inaccurate translations;
- Claim 3(g), not moving for a directed verdict on count III (conspiracy);
- Claim 3(h), not investigating, deposing, and subpoenaing the Chadwicks to testify on their observations of Pedro;
- Claim 3(i), not moving for a new trial based on alleged lack of opportunity to confront Paula Chadwick;
- Claim 3(j), not objecting to Ortiz' testimony regarding Betancourt's domestic assault;
- Claim 3(k), not objecting to jury instructions Nos. 2, 4, 8, 13, and 15;
- Claim 3(l), not adequately advising Betancourt about his right not to testify;
- Claim 3(m), not objecting on remand to the district court's sentence of "life imprisonment without parole" on the conspiracy conviction; and
- Claim 3(n), failing to raise plain error on the district court's refusal to instruct the jury on the lesser-included offense of first degree false imprisonment.

## IV. STANDARDS OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021), *modified on denial of rehearing* 309 Neb. 399, 959 N.W.2d 818.

[2,3] Claims of ineffective assistance of counsel involve mixed questions of law and fact. *Id*. When reviewing claims of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error and the legal determinations de novo. *Id*.

## V. ANALYSIS

[4] As an initial matter, we observe that Betancourt's appeal of the district court's order of July 1, 2020, is properly before us, because within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without a hearing. *State v. Koch*, 304 Neb. 133, 933 N.W.2d 585 (2019). Such an order is appealable because as to the denied claim, it is a "final judgment" under Neb. Rev. Stat. § 29-3002 (Reissue 2016). *State v. Koch, supra*.

Below, we analyze each of Betancourt's assignments of error. We find merit only to Betancourt's claim that upon remand occasioned by *Betancourt I*, Betancourt's counsel was deficient for failing to object to the district court's imposition of a sentence for conspiracy (count III) of "life imprisonment without parole," rather than "life imprisonment." We remand the cause to the district court for a hearing on this claim, and we affirm the order of the district court with respect to Betancourt's remaining claims.

[5-7] A defendant seeking relief under the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016), must show that his or her conviction was obtained in violation of his or her constitutional rights. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). Postconviction relief is a narrow category of relief and is not intended to secure a routine review for any defendant dissatisfied with his or her sentence. See *State v. Malone, supra*. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal. *Id*.

[8,9] An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable. *State v. Johnson, supra*. Section 29-3001(2) of the

Nebraska Postconviction Act entitles a prisoner to an evidentiary hearing on a motion for postconviction relief unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief. *State v. Malone, supra*. An evidentiary hearing is not required if (1) the motion does not contain factual allegations of a violation or infringement of the prisoner's constitutional rights, (2) the motion alleges only conclusions of fact or law, or (3) the record affirmatively shows that the prisoner is entitled to no relief. *Id.*

[10,11] Thus, when a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Johnson, supra.* If the petitioner has not alleged facts which would support a claim of ineffective assistance of counsel or if the files and records affirmatively show he or she is entitled to no relief, then no evidentiary hearing is necessary. *Id*.

Our ineffective assistance of counsel jurisprudence stems from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which held that a criminal defendant's rights under U.S. Const. amend. VI may be violated if he or she is afforded inadequate representation by his or her attorney. *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021), *modified on denial of rehearing* 309 Neb. 399, 959 N.W.2d 818. Under *Strickland*, we apply a two-step analysis for determining whether a defendant is entitled to postconviction relief based on a claim of ineffective assistance of counsel. *State v. Malone, supra*.

[12-14] To prevail under *Strickland*, a defendant must first show that his or her attorney's performance was deficient, meaning it objectively did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Malone, supra*. Second, the defendant must show that he or she suffered

prejudice as a result of the attorney's deficient performance. *Id*. To show that defense counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.*

## 1. Destroyed Evidence

Betancourt contends that he received ineffective assistance of counsel when, in his direct appeal, his appellate counsel failed to raise trial counsel's ineffectiveness for failing to argue that the destruction and unavailability of destroyed evidence violated his right to due process. The evidence, which was destroyed prior to Betancourt's rearrest, included tape and cord that bound Pedro's face, ankles, and wrists, and Betancourt contends that such evidence could have contained the perpetrator's skin cells or hair stuck to the tape. Betancourt reasons that if the evidence could have been tested, the absence of Betancourt's DNA or inclusion of DNA other than that of Betancourt or Torres would have supported his defenses of misidentification or alibi. He contends that the evidence points to bad faith handling of the evidence, because of the method, the procedure, and the seriousness of the felonies involved.

The record, including testimony on Betancourt's motion for DNA testing, shows that a local law enforcement officer burned the evidence as part of an initiative to clean out the evidence locker of evidence from old cases. See *Betancourt II, supra*. At that time, Betancourt was deported, his whereabouts were unknown, and the charges against him had been pending

for 7 years. Even if the evidence was potentially exculpatory, the record shows that its destruction was not done in bad faith, and under *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), the State's acts did not violate Betancourt's right to due process. A hearing on this claim was not warranted.

## 2. Plea Offer

Betancourt claims that appellate counsel was deficient for not raising trial counsel's allegedly deficient conduct concerning plea offers. Betancourt generally asserts that he was not properly advised of the penalty for conspiracy to commit kidnapping and that he did not understand the sentencing recommendation from the State. He claims an interpreter contacted Betancourt's counsel and advised that because Betancourt believed he was ineligible for good time as an undocumented immigrant, Betancourt did not understand the good time law. Betancourt claims in particular that counsel failed to present to him a plea offer of a Class II felony and a recommendation of 50 to 50 years' imprisonment.

Betancourt does not allege, and the record does not suggest, that appellate counsel knew or should have known to raise this claim. The record shows that Betancourt rejected a plea offer of a Class II felony and a recommendation of 20 to 20 years' imprisonment. Thus, there is little reason to believe that he would have accepted a 50 to 50 years' imprisonment offer if presented to him in a different way. Even if the claim concerning counsel's conveyance of the plea offer reflected deficient performance, Betancourt was not prejudiced thereby. A hearing on this claim was not warranted.

## 3. Other Claims

### (a) Motion to Quash Counts I and II of the Information Based on a Statute of Limitations Defense

Betancourt asserts that his appellate counsel was deficient for not raising ineffectiveness of trial counsel for not filing

a motion to quash count I, kidnapping, and count II, use of a firearm to commit a felony. The district court did not adjudicate this allegation in its order. However, the claim is affirmatively refuted by the record as we determined in *Betancourt I*, wherein we concluded that counts I and II were filed within the statute of limitations. Further, Betancourt's counsel filed a motion to quash the State's amended information based on the statute of limitations and specifically sought dismissal on count III, conspiracy.

The record showed that on November 17, 2003, the State timely filed an initial information charging counts I and II and obtained an arrest warrant 2 days after the crimes were committed. The State filed an amended information on May 21, 2014. The district court conducted a hearing on Betancourt's motion to quash count III. The court heard evidence on whether Betancourt fled from justice for purposes of Neb. Rev. Stat. § 29-110(7) (Reissue 2008), which provides that the time limitation for filing charges "shall not extend to any person fleeing from justice." That evidence showed the events involving Betancourt's ultimate arrest in Texas to where Betancourt had fled and subsequent extradition to Nebraska. Given the undisputed evidence that Betancourt had fled Nebraska and by application of § 29-110(7), the district court overruled Betancourt's motion to quash count III. A motion to quash on counts I and II would have been similarly unsuccessful under § 29-110(7). *Betancourt I, supra*. A hearing on this claim was not warranted.

(b) Motion to Quash and/or Dismiss Count II,
Use of a Firearm to Commit a Felony

Betancourt claims that his appellate counsel was ineffective for not raising trial counsel's ineffectiveness for not moving to quash or dismiss the use of a firearm to commit a felony charge on the ground that the State did not recover the gun described by witnesses. Betancourt claims that without the gun, the State could not have demonstrated that it met the requirements of

Neb. Rev. Stat. § 28-1201 (Reissue 2008), which generally describes an operable firearm.

[15,16] In *State v. Lee*, 195 Neb. 348, 237 N.W.2d 880 (1976), we held that the State is not required to prove that a firearm is operable under a predecessor to our statute criminalizing possession of a firearm by a prohibited person, Neb. Rev. Stat. § 28-1206 (Reissue 2008). We stated: "[E]vidence of possession of a revolver or gun of prohibited description, which is in apparently good condition and has the characteristics and appearance commonly understood to be those of the firearm it purports to be, is prima facie evidence sufficient to go to the jury." *State v. Lee*, 195 Neb. at 350, 237 N.W.2d at 882. We logically apply this rationale to § 28-1201(1), which provides that "[f]irearm shall mean any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or frame or receiver of any such weapon." Thus, the operability of a handgun is not relevant to whether it is a firearm used under Neb. Rev. Stat. § 28-1205(1)(a) (Reissue 2008) (use of deadly weapon to commit felony). See *State v. Clark*, 10 Neb. App. 758, 766, 637 N.W.2d 671, 677 (2002) (firearm did not have to be operable to prove use of deadly weapon to commit felony). If courts required a firearm to be operable, we effectively would be adding an element to this statute. Under Nebraska law, all crimes are statutory and no act is criminal unless the Legislature has in express terms declared it to be so. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). "'Had the legislature wished to draw a distinction between operable and inoperable firearms, it would have done so with clear and distinct language.'" *State v. Clark*, 10 Neb. App. at 765, 637 N.W.2d at 676-77 (quoting *Armstrong v. Commonwealth*, 36 Va. App. 312, 549 S.E.2d 641 (2001)).

The district court did not adjudicate this allegation. However, the claim is affirmatively refuted by the record by evidence that Betancourt and his coconspirator both used a "firearm." Torres admitted at trial that he and Betancourt threatened Pedro with guns, took him to the shed, and left him there while they

looked for Pedro's brother Jose. A hearing on this claim was not warranted.

### (c) Hearsay Testimony at Pretrial Hearing

Betancourt claims ineffectiveness of appellate counsel for failing to raise that trial counsel did not object to hearsay testimony during the pretrial hearing on Betancourt's motion for absolute discharge. The testimony consisted of a law enforcement officer's reading from the information contained in the records of the Madison County sheriff's office about Betancourt's arrest in Texas in 2004. Betancourt's claim is affirmatively refuted by the record. The hearing was preliminary, and the rules of evidence did not apply pursuant to Neb. Rev. Stat. § 27-1101 (Reissue 2008). A hearing on this claim was not warranted.

### (d) Change of Interpreter

Betancourt claims that his appellate counsel was ineffective for not raising trial counsel's ineffectiveness for not securing a different translator for Betancourt's recorded jail phone calls. Betancourt alleged that the Madison County Attorney suspected Betancourt was tampering with witnesses and that in his conversations, Betancourt expressed consciousness of guilt. The county attorney directed interpreter Izabel Chavez to listen, translate, and transcribe Betancourt's recorded phone calls. The transcriptions were used against Betancourt. Betancourt claims that Chavez had a conflict of interest because, in addition to translating for court appearances and attorney visits, Chavez was working under the supervision of the county attorney. He claims numerous errors with the quality of Chavez' translations.

The district court did not adjudicate this allegation. Our review of the allegations is that they are insufficient to show that a different translator of the jail phone calls would have changed the substance of the translation or that Betancourt was prejudiced by counsel's alleged inattentiveness to this claim. A hearing on this claim was not warranted.

### (e) Conflict of Interest of Public
### Defender's Office

Betancourt claims that his trial counsel operated under a conflict of interest, because the district court reappointed the Madison County public defender's office to represent him even though he had previously fired an attorney from that office for "not answering his phone calls, investigating the case, contacting . . . alibi witnesses and communicating with Betancourt." Brief for appellant at 30. Betancourt claims he was unaware that he had a conflict of interest with the Madison County public defender's office, which, if raised, could have compelled the court to appoint different attorneys.

[17,18] We define an actual conflict of interest for Sixth Amendment purposes broadly. *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021), *modified on denial of rehearing* 309 Neb. 399, 959 N.W.2d 818. The phrase "actual conflict of interest" encompasses any situation in which a defense counsel faces divided loyalties such that regard for one duty tends to lead to disregard of another. *Id*. An actual conflict of interest is one that adversely affects counsel's performance. *Id*. We have recognized that "'[n]ot all conflicts of interest that affect the attorney's "duty of loyalty" have the same consequences . . . .'" *State v. Avina-Murillo*, 301 Neb. 185, 198, 917 N.W.2d 865, 875 (2018).

Betancourt's claim of ineffectiveness based on trial counsel's conflict of interest is insufficiently alleged. He does not claim that he notified his appellate counsel of the conflict. Further, appointment of a public defender where the defendant has previously worked with the same office and requests appointment of counsel from that office, even if it is a conflict, is not the type of conflict from which we presume prejudice. See *id.* A hearing on this claim was not warranted.

### (f) Testimony of Nino-Mucia on
### Inaccurate Translations

Betancourt claims that his appellate counsel was ineffective for not raising the ineffectiveness of trial counsel for failing

to call interpreter Nino-Mucia to testify regarding inaccurate translations. Betancourt alleges that Nino-Mucia would have testified that the translations performed by Chavez in the course of the case (1) were incomplete because the "industry standards required that the original Spanish be included in the translation transcription"; (2) were of poor quality; (3) included omissions, mislabeling of speakers, punctuation errors, and typographical errors; (4) included several "fix/add" in the transcriptions; (5) were, in his professional opinion, of poor quality; and (6) were unfit such that they posed a legal issue. Brief for appellant at 33. On appeal, Betancourt contends that if Nino-Mucia had testified, "one of the jury members could have concluded that [Chavez'] translation/transcription was of such bad quality" that Betancourt could not fully understand the trial proceedings and the nature of the decisions made by his attorneys. *Id.* at 34. The petition for postconviction relief offers no examples of substantive weaknesses of the translations.

We agree with the district court that the allegations were insufficiently alleged to warrant an evidentiary hearing. A hearing on this claim was not warranted.

### (g) Motion for Directed Verdict
### on Count III, Conspiracy

Betancourt claims that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness because no motion for a directed verdict of acquittal was filed on count III, conspiracy to commit kidnapping. Betancourt asserts that the State failed to prove beyond a reasonable doubt that he and his coconspirator, Torres, had an agreement or understanding to kidnap Pedro. He points to testimony by Torres that Betancourt asserts shows they had different intentions and objectives on the day the crimes were committed. Betancourt claims that trial counsel did not make clear to the trial court that Betancourt and Torres did not share intentions.

[19,20] The district court did not adjudicate this allegation. However, this claim is affirmatively refuted by the record. Betancourt's trial counsel moved for a directed verdict and

renewed the motion. Each motion was overruled. Recasting trial counsel's motion for a directed verdict as a more specific argument concerning Betancourt's intent would not have changed the ultimate issue decided by the trial court. We have held that with respect to proving the intent element of a conspiracy, "direct evidence of a positive agreement" to jointly participate in the violation of a criminal statute is not required to establish a crime. See *Beyl v. State*, 165 Neb. 260, 272, 85 N.W.2d 653, 660 (1957). A criminal conspiracy must necessarily be entered into with the intent to defraud the State or to violate a criminal law, and intent being a matter of the mind, it is rarely possible to prove that element of the crime except by circumstances. *Id.* Pedro testified to coordinated and joint illegal actions by Betancourt and Torres continuing beyond the initial abduction. A hearing on this claim was not warranted.

### (h) Inquiry Into Paula Chadwick and Bob Chadwick

Betancourt claims that appellate counsel was ineffective for not raising trial counsel's decision not to investigate, depose, and subpoena both Paula Chadwick and Bob Chadwick, the witnesses who encountered Pedro after the kidnapping and called law enforcement. He claims that the Chadwicks may have been able to testify that Pedro was released voluntarily.

The district court did not adjudicate this allegation. On our review of the record, we determine that this claim was speculative and, as alleged, is refuted by the record. The testimony suggested by Betancourt regarding how Pedro's tape was removed following his kidnapping and arrival at the Chadwicks' house while still bound would not have supported a lesser crime and would not have changed the outcome of the trial. A hearing on this claim was not warranted.

### (i) Motion for New Trial

Betancourt claims that appellate counsel was ineffective for not raising trial counsel's failure to move for a new trial on the basis of his constitutional right to confront Paula Chadwick.

He claims that her testimony would have shown that she contaminated the crime scene by helping to cut tape from Pedro's face, ankles, and wrists.

This claim is affirmatively refuted by the record. Paula Chadwick was not a witness at trial, and no testimonial statements from her were offered into evidence at the trial. U.S. Const. amend. VI provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Because Paula Chadwick was not a witness against Betancourt, U.S. Const. amend. VI does not grant him the right to confront her. See *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (observing that "'witnesses' against the accused," for Confrontation Clause purposes, are "those who 'bear testimony'"). A hearing on this claim was not warranted.

#### (j) Ortiz' Testimony on Domestic Assault

Betancourt claims that appellate counsel was ineffective for failing to assign that trial counsel was ineffective when counsel did not object to the testimony of Betancourt's wife, Ortiz. Such an objection would be based on the grounds of spousal privilege and relevance. Ortiz testified that she had two children with Betancourt, that she left Betancourt without telling him where she went, that she intended to hide from Betancourt, and that she had been hiding from Betancourt for 13 years. Betancourt claims that trial counsel performed deficiently by not informing Ortiz that, if she chose, she would not be compelled to testify against her husband. See *Trammel v. United States*, 445 U.S. 40, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980). Further, Betancourt claims that his trial counsel should have objected to Ortiz' testimony based on relevance and forced a hearing pursuant to Neb. Rev. Stat. § 27-403 (Reissue 2016) to determine if her testimony was relevant and, even if relevant, whether its probative value was outweighed by its prejudice to Betancourt. Betancourt claims a § 27-403 hearing

would have prevented him from being found guilty by the jury on an "emotional basis." Brief for appellant at 42.

With respect to spousal privilege, this claim is affirmatively refuted by the record. Betancourt's trial counsel objected to Ortiz' testimony on spousal privilege grounds and was overruled on the basis of Neb. Rev. Stat. § 27-505(3)(a) (Reissue 2016) (providing, in relevant part, that spousal privilege may not be claimed "[i]n any criminal case where the crime charged is a crime of violence . . .") Trial counsel was not deficient and, similarly, appellate counsel was not deficient in not pursuing this argument. A hearing on this claim was not warranted.

### (k) Jury Instructions

Betancourt next claims that appellate counsel was ineffective for not raising trial counsel's ineffectiveness for not objecting to jury instructions Nos. 2 (presumption of innocence), 4 (prior inconsistent statements), 8 (definition of intent), 13 (presence in Madison County), and 15 (elements of conspiracy). Reading the jury instructions together, and as a whole, the record affirmatively refutes Betancourt's claims with respect to instructions Nos. 2, 4, 8, and 15; the instructions are a correct statement of the law, not misleading, and adequately cover the issues supported by the pleadings and evidence. Instruction No. 13, regarding Betancourt's physical presence in Madison County, was correct as to count I, kidnapping, and count II, use of a firearm to commit a felony, but was erroneous with respect to count III, conspiracy. However, this error is harmless.

Jury instruction No. 2, regarding the presumption of innocence, read in relevant part as follows: "The defendant has pled not guilty to each of these crimes. He is presumed to be innocent. That means you must find him not guilty unless you decide that the State has proved him guilty beyond a reasonable doubt." Contrary to Betancourt's assertion, the court's use of the word "unless" rather than the phrase "unless and until" in instruction No. 2 did not make the instruction defective. See, e.g., *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016).

Regarding instruction No. 4, contrary to Betancourt's assertion, the typographical errors to which he draws our attention were insignificant and did not detract from the instruction's meaning or purpose. With respect to instruction No. 8, contrary to Betancourt's assertion, the inclusion of the second paragraph, which is not in NJI2d Crim. 5.1, was an accurate statement of the law. See *State v. Kennedy*, 239 Neb. 460, 476 N.W.2d 810 (1991). Regarding instruction No. 15, contrary to Betancourt's assertion, whether Betancourt fled from justice was in fact relevant to whether the conspiracy charge was time barred and whether Betancourt could be found guilty of the conspiracy charge. See § 29-110(7) (tolling statute of limitations when defendant has fled). See *Taylor v. State*, 138 Neb. 156, 292 N.W. 233 (1940). Further, contrary to Betancourt's assertion, it did not improperly shift the burden of proof to Betancourt.

[21] Instruction No. 13 read: "An issue in this case is whether [Betancourt] was present in Madison County, Nebraska, on November 15, 2003. The State must prove that he was." We agree with Betancourt and the State that with respect to count III, conspiracy, instruction No. 13 was an inaccurate statement of the law because Betancourt's physical presence in Madison County need not have been proved for purposes of the conspiracy. Neb. Rev. Stat. § 28-202(1) (Reissue 2008), which defines criminal conspiracy, states:

> A person shall be guilty of criminal conspiracy if, with intent to promote or facilitate the commission of a felony:
>
> (a) He agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and
>
> (b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

Thus, the crime of conspiracy does not require the physical presence of the accused. It has been noted that conspiracy may be charged in both the place of the agreement, as well as any locale where any overt act by any one of the conspirators

took place. See 2 Wayne R. LaFave, Substantive Criminal Law § 12.1(b)(2) (3d ed. 2018).

Instruction No. 13 was an accurate statement of the law as to count I, kidnapping, and count II, use of a firearm to commit a felony, and we conclude that although erroneous as applied to the conspiracy charge, any such error was harmless. See *State v. Abram*, 284 Neb. 55, 815 N.W.2d 897 (2012). The undisputed evidence was that all three alleged crimes physically took place in Madison County, and as such, instruction No. 13 would not have confused the jury. A hearing on this claim was not warranted.

### (l) Right Not to Testify

Betancourt claims that appellate counsel did not raise that trial counsel did not adequately advise him about his right not to testify and that if he decided not to testify, that fact could not be considered an admission of guilt and must not influence the verdict in any way. Regardless of whether trial counsel advised Betancourt he had a right not to testify, the record shows that he was so advised by the court. At his arraignment, Betancourt was advised of his right not to testify, as well as advised that if he chose not to testify, that fact could not be used against him. Thus, even if trial counsel failed to advise Betancourt in this regard, he was not prejudiced thereby and appellate counsel was not ineffective in not pursuing this argument. A hearing on this claim was not warranted.

### (m) Sentence for Count III, Conspiracy

Betancourt claims that appellate counsel, while serving as trial counsel upon remand for resentencing on the conspiracy conviction, was ineffective for not objecting to the district court's imposition of a sentence of "life imprisonment without parole." The State concedes that Betancourt's conspiracy sentence of "life imprisonment without parole" is not authorized.

In *Betancourt I*, the direct appeal, we remanded the cause for resentencing on the conspiracy conviction with directions to impose a life sentence. We said:

Turning again to plain error, where, after a conviction following a jury trial, the trial judge imposed an incorrect sentence, we have found plain error and ordered the trial court to correct the sentence. See *State v. Thorpe*, 280 Neb. 11, 26, 783 N.W.2d 749, 762 (2010) (remanding with directions to resentence to life imprisonment because "life imprisonment without parole" was not a valid sentence for first degree murder). In this instance, the incorrect sentence constituted plain error, and we remand for imposition of a sentence of life imprisonment.

*Betancourt I*, 295 Neb. at 192, 887 N.W.2d at 313. Despite this direction, the district court on January 27, 2017, resentenced Betancourt to a term of "life imprisonment without parole."

We agree with Betancourt and the State that counsel was deficient by failing to object to an improper sentence for count III, conspiracy to commit kidnapping. Because this is a postconviction proceeding brought under the provisions of § 29-3001 et seq., rather than vacating this sentence, this court is required to remand the cause to the trial court for a hearing. See *State v. Rolling*, 218 Neb. 51, 352 N.W.2d 175 (1984).

### (n) Jury Instruction on Lesser-Included Offense of First Degree False Imprisonment

Betancourt claims that his appellate counsel was ineffective for not challenging the district court's refusal to instruct the jury on the lesser-included offense of first degree false imprisonment. He claims that such an instruction would have allowed the jury to determine whether Betancourt intended to commit kidnapping or the crime of first degree false imprisonment.

The lesser-included offense instruction was not warranted by the evidence. This claim is affirmatively refuted by the record. We have stated:

"Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some

evidence to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction." *State v. Stabler*, 305 Neb. 415, 424-25, 940 N.W.2d 572, 580 (2020). It is the intent to terrorize that distinguishes kidnapping from first degree false imprisonment. *State v. Becerra*, 261 Neb. 596, 624 N.W.2d 21 (2001). In this case, the State offered ample evidence that Betancourt and Torres intended to terrorize Pedro through their words and acts, and Betancourt did not introduce evidence to dispute the issue of intent to terrorize. A hearing on this claim was not warranted.

## VI. CONCLUSION

The district court erred when it failed to determine that Betancourt was entitled to an evidentiary hearing regarding his claim that counsel who appeared with Betancourt at the resentencing upon remand from *Betancourt I* was deficient for failing to object to the resentence of "life imprisonment without parole" for conspiracy. This is not an authorized sentence; a sentence of life imprisonment is authorized. The judgment of the district court is reversed with respect to this claim, and the cause is remanded to the district court with directions to conduct a hearing on Betancourt's sentence for conspiracy. On Betancourt's remaining claims, we affirm the judgment of the district court that denied postconviction relief without an evidentiary hearing.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

FUNKE and FREUDENBERG, JJ., not participating.