Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/26/2026 08:07 AM CDT

State of Nebraska, appellee, v.
Kevin S. German, appellant.
___ N.W.3d ___

Filed June 26, 2026.    No. S-25-673.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.

3. **Judgments: Appeal and Error.** A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.

4. **Postconviction: Constitutional Law.** Postconviction relief, described in Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2024), is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.

5. **Postconviction: Pleadings.** The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.

6. ____: ____. A postconviction motion that lacks the specific factual allegations necessary to support the claims made is no more than a fishing expedition for evidence that might aid in obtaining postconviction relief and is therefore insufficient to warrant an evidentiary hearing.

7. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is required on a motion for postconviction relief containing specific factual allegations that, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution—unless the records and files affirmatively show that the defendant is entitled to no relief.

8. ____: ____: ____. An evidentiary hearing is required on a motion for postconviction relief unless (1) the motion does not contain factual allegations that, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

9. **Postconviction: Proof.** In the absence of alleged facts that would render a judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing.

10. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.

11. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Ordinarily, the issue of trial counsel's alleged ineffectiveness will be procedurally barred when a defendant's trial counsel is different from his or her counsel on direct appeal and the defendant does not raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.

12. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review.

13. **Effectiveness of Counsel: Appeal and Error.** An ineffective assistance of counsel claim is not procedurally barred if it was raised on direct appeal but not expressly or necessarily decided on the merits.

14. **Postconviction: Claim Preclusion: Appeal and Error.** The Nebraska Supreme Court applies principles analogous to claim preclusion on postconviction actions to bar relitigating any issues directly addressed or necessarily included in its decision on direct appeal of an inmate's convictions and sentences.

15. **Postconviction: Collateral Attack: Appeal and Error.** A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal.

16. **Effectiveness of Counsel: Proof: Appeal and Error.** Like a claim of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel has two prongs, deficient performance and prejudice. These can be addressed in any order, and a court need not examine both prongs if a defendant fails to demonstrate either.

17. ____: ____: ____. To show deficient performance, an inmate alleging a layered claim of ineffective assistance of appellate counsel must allege

sufficient facts that, if proved, would demonstrate appellate counsel was objectively unreasonable in failing to discover and raise a nonfrivolous issue on direct appeal.

18. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A motion for postconviction relief based on appellate counsel's failure to raise on direct appeal trial counsel's allegedly deficient conduct fails when it does not allege that appellate counsel knew or should have known to raise the issue.

19. **Postconviction: Proof: Appeal and Error.** To show prejudice from the alleged deficient conduct of appellate counsel, an inmate on postconviction must allege supporting facts for the assertion that raising the issue on direct appeal would have changed the outcome.

20. ____: ____: ____. An inmate on postconviction must show a reasonable probability that, but for his or her appellate counsel's failure to properly raise the issue on appeal, the result of the appeal would have been different.

21. **Effectiveness of Counsel: Appeal and Error.** If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise on direct appeal the issue of trial counsel's ineffectiveness.

22. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.

23. **Effectiveness of Counsel.** As a matter of law, counsel is not ineffective for not attempting to adduce inadmissible testimony.

24. **Evidence.** Evidence that is not relevant is inadmissible.

Appeal from the District Court for Chase County: Patrick M. Heng, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Vaughn, JJ., and Hoeft, District Judge.

Freudenberg, J.

## I. INTRODUCTION

The defendant appeals from the district court's dismissal of his motion for postconviction relief without an evidentiary hearing. He raised in his motion issues of ineffective assistance of counsel, primarily layered claims, involving (1) trial counsel's advice leading to his decision not to testify, (2) trial counsel's failure to object to or seek redaction of certain comments by the defendant in a police interview played for the jury, (3) trial counsel's failure to adduce a victim's alleged past acts of prostitution, (4) trial counsel's failure to challenge his competency during trial when he was not receiving his medication for attention deficit disorder, and (5) appellate counsel's failure to present a better argument on appeal pertinent to whether trial counsel was ineffective concerning jury instructions on kidnapping and aiding and abetting. We affirm.

## II. BACKGROUND

Kevin S. German was convicted of second degree murder and kidnapping of Annika Swanson and of first degree false imprisonment of Eve Ambrosek. The charges were based on events occurring over a 2-day period in November 2019 in Imperial, Nebraska, involving German's drug dealing and romantic entanglements.

German's girlfriend, Keonna Carter, was involved in the commission of the crimes and testified at trial pursuant to a plea bargain agreement. The district court sentenced German to 60 to 80 years' imprisonment for murder in the second degree, life imprisonment for kidnapping, and 30 to 36 months' imprisonment for first degree false imprisonment. German's convictions and sentences were affirmed on direct appeal in *State v. German*.[1] German appeals the district court's denial, without an evidentiary hearing, of his motion for postconviction relief.

---

[1] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

## 1. Trial Facts

German's trial took place in the district court for Chase County, Nebraska, in Imperial. German's pretrial motion for a change of venue was overruled after the court considered the questionnaires submitted by the venire, and it overruled a renewed motion for change of venue at the close of voir dire.

As set forth in more detail in our opinion in *German*, the jury heard the following evidence at trial: In the summer of 2019, German was living in Louisiana and was in a relationship with both Carter and Ambrosek, telling each of them that the relationship with the other was over. Carter lived in Colorado, and Ambrosek lived in Imperial. German and Ambrosek both sold drugs. In September 2019, German moved back to Imperial, where Ambrosek introduced German to Russ Mann, who also sold drugs. Mann lived with Swanson in a trailer where they used methamphetamine daily. German knew Swanson from when they attended high school together in Imperial. Over the next couple of months, Mann regularly gave German methamphetamine in exchange for cocaine.

Ambrosek suspected that German was still in a relationship with Carter and eventually ended the relationship. German moved in with Carter in Colorado but made frequent trips to Imperial to deliver drugs to Mann. German was becoming upset with Swanson because she was a "busy body" who could not "keep her mouth shut" and was interfering with their drug dealing.

On November 12, 2019, German and Carter were at Mann's trailer when Swanson received a text from Ambrosek, seeking drugs. Swanson told German, in Carter's presence, that his "girlfriend" was texting her. Apparently Ambrosek owed German money, so he took Swanson's phone and pretended to be Swanson to set up a meeting with Ambrosek. German drove to the designated meeting point, where he told Ambrosek to get into Carter's car. Carter was in the passenger seat. While German drove and held a gun, Carter yelled at Ambrosek and hit her. They eventually stopped at land

belonging to German's family, where German and Carter assaulted Ambrosek and gave her the choice of being either killed or prostituted out. Ambrosek agreed to prostitute herself and they returned Ambrosek to Mann's trailer.

The next morning, November 13, 2019, Ambrosek and Swanson were kept at the trailer against their will. At some point, Swanson and Carter spoke alone and Swanson told Carter that German and Ambrosek had a sexual relationship in September and October 2019. Carter became angry. At Carter's urging, she and German left to return to Colorado, but Carter confronted German about his relationship with Ambrosek while they were in the car. German became very angry with Swanson, claiming she was lying, and drove back to Mann's trailer.

When German and Carter arrived at Mann's trailer, German dragged Swanson outside, put her in the back of the car, and drove off. German eventually stopped the car along a gravel road after Swanson said something that upset German further. He pulled Swanson out of the car, and both German and Carter physically assaulted her. After Carter stepped on Swanson's neck, Swanson's "pulse just got weak." German and Carter put Swanson in the trunk of the car, and German drove again to his family's land, this time to a place where a vertical pipe protruded from the ground.

While they were driving, Carter heard Swanson moan. When they let Swanson out of the trunk, Carter heard German tell Swanson to drink something. Carter said there was a container of windshield wiper fluid in the car. German next told Swanson to get into the pipe, and after Swanson did so, Carter saw German ignite some items and throw them into the pipe while Swanson repeatedly said, "'[N]o.'" German and Carter returned to Mann's trailer, where German told Mann that Swanson was somewhere no one would find her.

The court admitted into evidence and played for the jury a recording of German's custodial interview with law enforcement when they were searching for Swanson's whereabouts after her father reported her as missing. German said that, on

the night in question, he drove Swanson out of town to get her out of a bad situation. German said he dropped Swanson off and speculated she "either ran off with a Mexican dude . . . or she got killed." During the interview, German commented that he was "the only black kid" growing up in the small town of Imperial, where he learned what racism was "real quick." He also commented that because "people know people," the police did not do their jobs, and that the police and sheriff were corrupt. Finally, German said that his family was well off and that people expected him to "hand out money or something."

Swanson's body was eventually found in a horizonal structure that was connected to the vertical pipe, which was part of a culvert system. The State's expert witness testified that Swanson's cause of death was blunt force head injuries and methanol and methamphetamine toxicity. The expert opined that the methanol was at a fatal level and that the methamphetamine was a contributing factor. Windshield wiper fluid contains methanol, and evidence retrieved from the scene included a bottle containing methanol.

German did not testify in his own defense. Before the case was submitted to the jury for deliberations, an on-the-record discussion with German documented his decision not to testify in his own defense. German confirmed he and defense counsel had discussed the matter on "a number of occasions" and that he understood his right to testify. German stated he was not pressured by defense counsel not to testify; rather, it was a decision he made because he believed it to be the appropriate choice under the circumstances.

Defense counsel argued to the jury that Carter and Swanson engaged in a fight that contributed to Swanson's eventual death. Other than Carter's testimony, there was no evidence German attacked Swanson, "knew what was going to happen between these two women, or what . . . Carter was going to do[,] or encouraged it or approved of it." Defense counsel made several arguments undermining the credibility of the witnesses against German, especially Carter and Ambrosek.

Defense counsel asserted that Carter had a motive to lie and that it was Carter, not German, who made Swanson drink the windshield wiper fluid. Regardless, neither German nor Carter necessarily knew windshield wiper fluid could cause serious injury or death.

The court instructed the jury, "You must not allow sympathy or prejudice to influence your verdict." It gave a step instruction for homicide with a corresponding aiding and abetting instruction.

The aiding and abetting instruction given for the charges of first degree murder, second degree murder, and manslaughter was based on NJI2d Crim. 3.8. The court instructed that German could be guilty even though he personally did not commit every act involved in the crime, so long as he aided someone else to commit it, explaining that German aided someone else to commit the crime of murder if (1) he intentionally encouraged or intentionally helped another person to commit the crime and (2) he intended that the crime be committed or knew the other person intended to commit the crime and (3) the crime was in fact committed by that other person. The court also explained: "Mere encouragement or assistance is sufficient. On the other hand, the evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving [German] guilty."

The court instructed the jury that the elements of second degree murder were that German, either independently or while aiding and abetting another, intentionally, but without premeditation or the provocation of a sudden quarrel, killed Swanson.

The court instructed that the elements of kidnapping were that German either independently or while aiding and abetting another did abduct Swanson or, having abducted her, continued to restrain her, and that he did so with the intent to terrorize her or to commit a felony. The aiding and abetting instruction corresponding to the kidnapping instruction was similar to the one for homicide.

The trial court refused trial counsel's tendered aiding and abetting instructions, which closely followed the language from *State v. Ramsay*,[2] wherein we held that an aider and abettor can be liable as a principal for a crime requiring proof of a particular intent only if it is shown that the aider and abettor knew that the perpetrator of the act possessed the required intent or that the aider and abettor himself possessed such intent:

> When the elements of a crime charged require proof of the existence of a particular intent, an alleged aider or abettor can be held criminally liable as a principal only if it is shown that the aider and abettor knew that the perpetrator of the act possessed the required intent, or that the aider and abettor himself possessed such intent.

Additionally, trial counsel proposed to add "[i]ntentional" before "[m]anslaughter," which the trial court refused.

## 2. Interrelated Claims Made on Direct Appeal and on Postconviction

Following the jury's verdict, German, with new counsel, appealed, assigning 11 errors, including 8 instances of ineffective assistance of trial counsel. Several of the errors assigned by appellate counsel on direct appeal are related to claims in German's motion for postconviction relief. Broadly, these fall into three categories: the instructions, the police interview statements, and German's decision not to testify.

### (a) Instructions

The instructions were the source of several challenges on direct appeal, as well as a layered claim in the postconviction motion. These challenges focused on the manslaughter, aiding and abetting, and kidnapping instructions and revolved around arguments that the jury (1) was permitted to find German guilty under an aiding and abetting theory without the necessary intent and (2) was not required to determine

---

[2] *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

whether German liberated Swanson alive in a safe place without her having suffered serious bodily injury.

### *(i) Direct Appeal*

#### a. Aiding and Abetting Instructions

We found no merit on direct appeal to German's appellate counsel's allegation that the trial court erred by refusing to give trial counsel's tendered instructions on aiding and abetting. We held that while the language proposed by German was a correct statement of the law, a court should usually give the applicable instruction in the Nebraska Jury Instructions, and the court's instruction based on NJI2d Crim. 3.8 was a fair, impartial, and complete statement of the applicable law. We held that this instruction was compliant with *Ramsay*; in fact, we could "discern no significant difference between the instructions given and German's requested instructions."[3]

#### b. Manslaughter and Kidnapping Instructions

Relatedly, we found no merit to appellate counsel's challenges to the trial court's decision rejecting his tendered instruction on "[i]ntentional [m]anslaughter" and to trial counsel's failure to object to the kidnapping jury instruction or tender an appropriate instruction on kidnapping. Appellate counsel argued that the instructions for homicide and kidnapping were both problematic because they incorporated an unintentional form of manslaughter as a possible predicate felony. Appellate counsel argued that any conviction of homicide or kidnapping through aiding and abetting "'must be affixed to intentional crimes'"[4] and that because of the "unintentional . . . manslaughter" instruction, they possibly were not.[5] We reasoned that German could not establish prejudice

---

[3] *State v. German, supra* note 1, 316 Neb. at 858, 7 N.W.3d at 222. See *State v. Ramsey, supra* note 2.

[4] *State v. German, supra* note 1, 316 Neb. at 859, 7 N.W.3d at 222.

[5] *Id*. at 858, 7 N.W.3d at 222.

with respect to either the alleged trial error or the alleged deficient conduct of trial counsel, because the jury found him guilty of second degree murder. We explained that, under the step instructions, the jury never considered "unintentional" manslaughter as the predicate felony.

### c. Challenge That Jury Was Not Required to Make Factual Findings Under Statute

Lastly, as relates to the instructions, appellate counsel challenged the trial court's failure to require the jury, in determining German's guilt on the charge of kidnapping, to make the factual findings that would distinguish the crime as either a Class IA felony or a Class II felony under Neb. Rev. Stat. § 28-313 (Reissue 2016). Appellate counsel also challenged trial counsel's failure to object to the kidnapping instruction or tender an appropriate kidnapping instruction that would require the jury to make these findings. Counsel pointed to § 28-313, which states that except as provided in subsection (3) thereof, kidnapping is a Class IA felony. Section 28-313(3) states: "If the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony." Appellate counsel argued the U.S. Supreme Court's decision in *Alleyne v. United States*,[6] which held that any fact altering the legally prescribed punishment to aggravate it must be determined by the jury, applied to whether the person kidnapped was voluntarily released or liberated alive by the abductor in a safe place without having suffered serious bodily injury.

In affirming, we held that we need not determine the broader question of whether the jury must determine if the victim was voluntarily released or liberated alive by the abductor in a safe place without having suffered serious bodily injury,

---

[6] *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

because the jury necessarily rejected the idea that Swanson was released in a safe place without having suffered serious bodily injury when it found German guilty of the separate charge of second degree murder. In other words, German was not prejudiced by the instructions given.

### (ii) Motion for Postconviction Relief

In his motion for postconviction relief, German made a nuanced layered claim with respect to the alleged errors in the instructions on both kidnapping and aiding and abetting. German asserted that appellate counsel failed to "clearly and effectively" argue the *connection* between the erroneous wording of the aiding and abetting instruction and the erroneous kidnapping instruction. German asserted that because of this deficient performance, we failed to consider the interplay of the kidnapping and aiding and abetting instructions when finding no merit to the assigned errors on direct appeal challenging the instructions.

More specifically, German suggested that, because of appellate counsel's deficient argument on appeal, we failed to consider the wording of the aiding and abetting instruction when holding there was no prejudice from the kidnapping instruction. German elaborated that because the jury instruction on aiding and abetting stated he could be guilty of second degree murder by mere encouragement or assistance, the jury could have found, under an aiding and abetting theory, that German was guilty of second degree murder without necessarily finding German intended, or knew that Carter intended, death. If that was so, then the jury did not, in finding German guilty of second degree murder, necessarily find the requisite mens rea for kidnapping as a Class IA felony carrying a mandatory life sentence.

German also asserted in his motion for postconviction relief that appellate counsel was ineffective by failing to assign and argue trial counsel was ineffective by failing to file a motion

for new trial on the kidnapping charge due to the allegedly erroneous instruction.

### (iii) Postconviction Order

The district court found that German's postconviction claim based on the failure to instruct the jury to determine whether Swanson was liberated alive was raised and decided on direct appeal and, thus, was procedurally barred. Likewise, the court found that the claim that appellate counsel was ineffective by failing to argue the connection between the allegedly erroneous wording of the aiding and abetting instruction and the allegedly erroneous kidnapping instruction had been necessarily addressed in the direct appeal. And if trial counsel was not ineffective, then German could not have been prejudiced by appellate counsel's failure to raise the issue.

### (b) Interview Statements

Both on direct appeal and in his postconviction motion, German raised ineffective assistance claims relating to the admission of certain statements from his police interview.

### (i) Direct Appeal

German's appellate counsel raised on direct appeal that trial counsel was ineffective by not objecting to or seeking to redact certain comments German made during the police interview. These included statements critical of Imperial, the people in that community, and local law enforcement. We said, "While German's comments may have been only minimally relevant, he does not explain how they were unfairly prejudicial."[7] We held that the record was insufficient to address this assignment of error because appellate counsel is not required on direct appeal to argue prejudice, and the record does not disclose trial counsel's reasons for not objecting to or seeking redaction of the statements.

---

[7] *State v. German, supra* note 1, 316 Neb. at 866, 7 N.W.3d at 226.

### (ii) Motion for Postconviction Relief

German reiterated in his motion for postconviction relief that trial counsel was ineffective by failing to object to or move to redact German's statements in his police interviews, which statements were critical of Imperial, the people in that community, and local law enforcement, including comments that the people in the community were racist and resentful of his family's success. He argued the statements were irrelevant and unfairly prejudicial because they put German "in an unfavorable light with the jury." Thus, they were inadmissible under Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 2016). German also mentioned that the audio was difficult to hear and unaccompanied by a transcript, which "confounded the issue of the unredacted and not relevant statements." German argued that the risk of undue prejudice from the statements was high because the trial took place in a small community and that "[t]he jury may have felt that [he] was rude, spoiled, [and] entitled, and lacked empathy to the community in his criticisms and comments of Imperial and Chase County."

### (iii) Postconviction Order

In denying this claim without an evidentiary hearing, the district court reasoned that the motion lacked the necessary specificity on how German was prejudiced from the statements concerning racism, the community, and law enforcement. The court alternatively reasoned that the record and files affirmatively show German is entitled to no relief, noting that German had ignored the jury selection "in which race, [German's] family and the small community were consistent themes for the jurors," as well as "the instruction that the jurors are to not allow sympathy or prejudice to influence their verdict[s]."

### (c) Advice on Waiving Right to Testify

Lastly, as relates to claims attempted on direct appeal, German alleged in his postconviction motion a layered claim

concerning advice by trial counsel that led to German's decision not to testify in his own defense.

### (i) Direct Appeal

Appellate counsel assigned in direct appeal that trial counsel was ineffective by failing to provide reasonable advice necessary for German to make a meaningful decision to waive the right to testify. Appellate counsel generally argued that trial counsel failed to properly explain the relative advantages or disadvantages of testifying. However, appellate counsel did not set forth any specific advice that was given or not given. We held that the claim lacked the specificity required to be considered on direct appeal.

### (ii) Motion for Postconviction Relief

In his motion for postconviction relief, German alleged appellate counsel was ineffective by failing to adequately raise on direct appeal that trial counsel was ineffective by failing to advise him to testify. To add the specificity lacking on direct appeal, German alleged on postconviction that trial counsel informed him of his right to testify, but that he told his trial counsel that testifying would not make any difference in his case and "[t]rial counsel did not rebut or challenge [German's] assertion." German alleged that it was unreasonable for trial counsel not to explain with particularity how testifying would have been beneficial and that he "detrimentally relied upon trial counsel's improper advice to not testify." German asserted that trial counsel failed to advise him how presenting this testimony would have given German an opportunity to contradict the testimony of Carter, Ambrosek, Mann, and other witnesses and to convince the jury that Carter assaulted and attacked Swanson.

To further illustrate how testifying would have been beneficial, German asserted in his motion for postconviction relief that he would have told the jury Carter was angry and jealous of Swanson, Swanson went voluntarily with him and Carter

in the car so they could all talk, German later stopped the car during an argument when Swanson set his hair on fire, and Swanson then climbed into the front seat, at which point Carter became angry, pulled Swanson from the car, and assaulted her, ultimately stepping on her neck. German would have further testified that "he did not intend to kill [Swanson] and did not know what Carter's intent was when she was harming and assaulting [Swanson]"; to the contrary, he tried to revive Swanson but could not, so he put her in the trunk. He would have testified he was relieved when he heard her cough and move and stopped the car and helped her out. He would have testified that Carter directed Swanson to drink something, which "turned out to be windshield wiper fluid." German would have testified he then dropped Swanson off on his parents' land, to avoid another confrontation, and told Swanson to either wait in the culvert, which he thought of as a safe place, or walk to a nearby house. Also, German alleged testifying would have "provided an opportunity for [him] to explain why he said what he said in his interview with police and why he seemingly disparaged the community and its people." He did not elaborate on this last point.

### (iii) Postconviction Order

In its order denying postconviction relief without an evidentiary hearing, the district court reasoned that German had failed to explain how the testimony he would have given would have changed the outcome of the trial. Further, German stated during the documented discussion regarding waiving his right to testify that he was not pressured by counsel and had made on his own the decision not to testify, which statement, the court said, "contradicts his position in this Motion." Finally, the court found that, like the petitioner in *State v. Golyar*,[8] German failed to allege how trial counsel's advice not to testify was unreasonable, given the testimony he could have given.

---

[8] *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

### 3. Claims Made for First Time
#### on Postconviction

Lastly, German made two layered claims in his motion for postconviction relief based on appellate counsel's failure to raise on direct appeal trial counsel's failures to adduce evidence of Ambrosek's alleged past acts of prostitution and of German's alleged incapacity because he was not given medication for his attention deficit disorder (ADD).

### (a) Ambrosek's Alleged Prior Prostitution

#### *(i) Postconviction Allegations*

German made a layered claim that appellate counsel was ineffective by failing to assign and argue on direct appeal that trial counsel was ineffective by failing to adduce evidence that Ambrosek had engaged in acts of prostitution before the events of November 12 and 13, 2019. German set forth in his motion, "Assuming trial counsel was aware that [Ambrosek] had provided sexual services" in exchange for things of value, trial counsel was ineffective by not trying to adduce this at trial.

German reasoned he was prejudiced because the jury likely assumed the prospect of being a prostitute was "terrifying" for Ambrosek, "mak[ing her more] sympathetic to the jury" and providing an explanation as to why Ambrosek "acted the way she did and would support the charge of kidnapping or false imprisonment." German summarized that "the fact that [Ambrosek] had been a prostitute before likely would have impacted the jury much differently and not seemed as so terrifying, and certainly the jury would not think it was terrifying to [Ambrosek]."

Regarding trial counsel's knowledge of Ambrosek's past acts of prostitution for drugs, German elaborated he "believes he told his trial attorney(s) about [Ambrosek] providing sexual services . . . but he is not certain." Nevertheless, he contended it was "safe to assume" that trial counsel was aware of Ambrosek's "propensity to provide sexual services" because

trial counsel was aware of sexual recordings subject to a "revenge porn situation" between Ambrosek and "her former lover," which stemmed from the fact that Ambrosek "had recorded herself in sexual activity and provided the recording to others."

German made no allegations concerning appellate counsel's knowledge of Ambrosek's past acts of prostitution. Instead, German generally alleged that an appellate attorney of ordinary training and skill would have specifically assigned and alleged how trial counsel's failure to adduce such evidence was ineffective, and that he was prejudiced.

#### (ii) Postconviction Order

In denying postconviction relief without an evidentiary hearing, the district court said that "even if such evidence would be admissible, the Court finds that it would not constitute a denial of [German's] constitutional rights or that the absence of alleged evidence would render the judgment in this case void or voidable."

### (b) Mental Competency Without ADD Medication

#### (i) Postconviction Allegations

German alleged a layered claim that appellate counsel was ineffective by failing to raise on direct appeal trial counsel's failure to challenge German's competency when he was not provided the medication prescribed for his ADD, asserting he had informed trial counsel that "he had ADD and that he needed medication to be able to concentrate in order to follow the course of the trial and to make decisions regarding the defense of his case." He also alleged he told trial counsel that he "felt overwhelmed by the stress of the case against him." He alleged trial counsel knew he was not being provided with his prescribed medication while being housed at the county jail.

German alleged that a practical consequence of his inability to make decisions regarding the defense of his case was his decision not to testify in his own defense. German alleged he

felt "frozen during the trial" and was unable to make decisions such as whether to testify in his own defense. He asserted that if he had been taking his medication, he would have testified in his own defense and told the jury about his tendency to "shut down when confronted with conflict or stressful situations," which allegedly explained why he did not intervene or confront Carter when she was assaulting Swanson.

While German generally alleged that "[a]n appellate attorney of ordinary training and skill would have specifically assigned and specifically alleged how trial counsel's failure to take appropriate efforts that [German] received his prescribed medication was ineffective," and he generally alleged he was prejudiced, German did not allege whether appellate counsel knew (1) he had ADD, (2) he was not given his medications during the trial, or (3) not taking his ADD medication materially affected his ability to make decisions.

### (ii) Postconviction Order

In denying postconviction relief without an evidentiary hearing on this claim, the district court reasoned that there was no evidence to suggest German did not understand what was occurring at trial, and that therefore, "based on the evidence and case law," it was denying the claim. Elaborating on the lack of evidence, the court said in entirety:

> There is no evidence to suggest that the failure of [German] to take this medication during trial prevented him to understand what was occurring at his trial. Nothing was noted by defense counsel or the Court that [German] was not actively engaged with his counsel at all times. The Court finds based on the evidence and case law, an evidentiary hearing is denied on this claim.

### 4. Cumulative Deficient Performance

Finally, German alleged in his motion for postconviction relief that his convictions and sentences were void or voidable due to the cumulative effect of the alleged acts of deficient performance.

Having found that none of the other claims individually warranted an evidentiary hearing, the district court denied this claim.

## III. ASSIGNMENTS OF ERROR

German assigns that the district court erred by denying his request for an evidentiary hearing on the claims that "his counsel" (1) did not advise him to testify, (2) was ineffective by failing to redact portions of his interview with law enforcement, (3) failed to "appreciate his mental health and medication needs and its [sic] impact on his participation" in his trial, and (4) failed to adduce evidence "regarding a key witness raised in his verified motion for postconviction relief." He also assigns the district court erred by denying his request for an evidentiary hearing on the claims that on the kidnapping charge, his trial counsel failed to request a jury instruction that required the jury to find whether Swanson was released or liberated alive, and that when the jury convicted him of the second degree murder charge, appellate counsel was ineffective by failing to argue the court's instruction on aiding and abetting did not require the jury to find that Swanson was released or liberated alive.

## IV. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[9]

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling.[10]

---

[9] *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

[10] *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

[3] A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.[11]

## V. ANALYSIS

[4] Postconviction relief, described in Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2024), is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.[12] Section 29-3001(1) states that postconviction relief is available for "such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States."

Section 29-3001(1) further states that the inmate "may file a verified motion, in the court which imposed such sentence, stating the grounds relied upon and asking the court to vacate or set aside the sentence." Section 29-3001(2), in turn, gives the right to an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief . . . ."

[5,6] We have explained that the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.[13] A postconviction motion that lacks the specific factual allegations necessary to support the claims made is no more than a fishing expedition for evidence that might aid in obtaining postconviction relief and is therefore insufficient to warrant an evidentiary hearing.[14]

[7-9] But an evidentiary hearing is required on a motion for postconviction relief containing specific factual allegations

---

[11] *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023).

[12] See *State v. Keadle*, 320 Neb. 583, 28 N.W.3d 524 (2025).

[13] *State v. Goynes, supra* note 9.

[14] *Id*.

that, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution—unless the records and files affirmatively show that the defendant is entitled to no relief.[15] In summary, an evidentiary hearing is required on a motion for postconviction relief unless (1) the motion does not contain factual allegations that, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[16] In the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing.[17]

[10] Under the category of the records and files affirmatively showing the defendant is entitled to no relief, it is proper to overrule the motion without an evidentiary hearing when the claims in the motion are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.[18]

[11,12] Ordinarily, the issue of trial counsel's alleged ineffectiveness will be procedurally barred when a defendant's trial counsel is different from his or her counsel on direct appeal and the defendant does not raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.[19] Claims of

---

[15] See *id*.

[16] *Id*.

[17] *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

[18] See, *State v. Parnell, supra* note 10; *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

[19] See *State v. Parnell, supra* note 10.

ineffective assistance of appellate counsel, on the other hand, may be raised for the first time on postconviction review.[20]

[13-15] An ineffective assistance of counsel claim is not procedurally barred if it was raised on direct appeal but not expressly or necessarily decided on the merits.[21] In contrast, we apply principles analogous to claim preclusion on postconviction actions to bar relitigating any issues directly addressed or necessarily included in our decision on direct appeal of the inmate's convictions and sentences.[22] The law is well settled that "[a] defendant 'cannot use a motion for postconviction relief to collaterally attack issues that were decided against him on direct appeal.'"[23]

### 1. Procedurally Barred Claims

We agree with the district court that German's postconviction claims revolving around the instructions given at trial are procedurally barred. Regardless of whether appellate counsel clearly argued a connection between the allegedly erroneous aiding and abetting instruction and the allegedly erroneous kidnapping instruction, we will not revisit our holding on direct appeal that the aiding and abetting instructions were correct statements of the law and consistent with the requirement in *Ramsay* that an aider and abettor must have either possessed the required intent or known the perpetrator possessed the required intent.[24] In fact, we "discern[ed] no significant difference" between the instruction given and the one trial counsel tendered.[25]

German continues to fixate on the aspect of the instruction stating that "[m]ere encouragement or assistance is sufficient."

---

[20] *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

[21] See *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007).

[22] See *id*. See, also, *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

[23] *State v. Thorpe*, 290 Neb. 149, 155, 858 N.W.2d 880, 887 (2015).

[24] See *State v. Ramsay, supra* note 2.

[25] *State v. German, supra* note 1, 316 Neb. at 858, 7 N.W.3d at 222.

German ignores that the trial court also instructed, as an element of aiding and abetting, that he must be found to have "intentionally encouraged or intentionally helped another person to commit the crime" and "intended that the crime be committed" or "knew that the other person intended to commit the crime" and, finally, further instructed that "mere presence, acquiescence, or silence is not enough." As we explained on direct appeal, the jury could not have found, under an aiding and abetting theory, that German was guilty of second degree murder as the predicate felony for kidnapping unless it also found that German himself killed Swanson intentionally, but without premeditation or provocation, or that German intentionally encouraged or intentionally helped Carter kill Swanson while knowing Carter intended without premeditation or provocation to kill Swanson.

We will also not revisit our holding that the jury's verdict on second degree murder meant German was not harmed by the trial court's failure to instruct the jury to determine whether Swanson was "voluntarily released or liberated alive by [German] and in a safe place without having suffered serious bodily injury" and, thus, that it was unnecessary to decide the various arguments German made as to why the district court erred by not giving this § 28-313(3) instruction. Ignoring the qualifier contained in § 28-313(3) that Swanson must have been released or liberated "without having suffered serious bodily injury," German mistakenly focuses on Swanson's being alive when "released or liberated." He asserts that "[s]he could have climbed out of" the culvert.[26] There was no evidence Swanson was already dead when German and Carter left her in the culvert, but there was substantial evidence that either German or Carter inflicted blunt-force head injuries upon Swanson and forced her to ingest methanol before they "released or liberated" her and that those acts, not the methamphetamine alone, were the proximate cause of her death.

---

[26] Brief for appellant at 29.

As we stated on direct appeal, it necessarily follows from the jury's verdict against German on second degree murder that the jury found Swanson was not released or liberated into the culvert alive in a safe place without having suffered serious bodily injury. The jury also necessarily found German was legally responsible for this serious bodily injury leading to Swanson's death and rejected German's defenses that Carter was solely responsible or that Swanson died solely from a methamphetamine overdose.

German's allegations in his motion for postconviction relief pertaining to the instructions are an impermissible attempt to collaterally attack issues decided against him on direct appeal. German cannot avoid this by way of newly framing the alleged error as ineffective assistance by not moving for a new trial or by any other reframing of the issues. As explained by secondary authority:

> A petitioner for postconviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error; where an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the state may defend against defendant's postconviction relief petition on grounds of prior adjudication or res judicata.[27]

For all the arguments revolving around the instructions, the underlying alleged error is the alleged failure to instruct the jury to determine if Swanson was safely released. German cannot escape the preclusive effect of our holding on direct appeal that, because the jury necessarily found either that German himself killed Swanson intentionally or that German intentionally encouraged or intentionally helped Carter kill Swanson while knowing Carter intended to kill Swanson, the jury necessarily found Swanson was not released or liberated

---

[27] 39 Am. Jur. 2d *Habeas Corpus* § 171 at 474-75 (2019).

alive by German in a safe place without having suffered serious bodily injury.

## 2. Preserved Claims of Ineffective Assistance of Trial Counsel

The remaining allegations in the motion for postconviction relief are not procedurally barred, but we ultimately find they fail either because they lack specificity or because the specific allegations, even if true, do not demonstrate German's convictions were void or voidable. Other than the allegation that trial counsel was ineffective by not objecting to or requesting redaction of the police interview statements, which was sufficiently raised on direct appeal but not decided, these remaining allegations involve layered claims that appellate counsel was ineffective.

[16] Like a claim of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel has two prongs, deficient performance and prejudice. These can be addressed in any order, and a court need not examine both prongs if a defendant fails to demonstrate either.[28]

[17,18] To show deficient performance, an inmate alleging a layered claim of ineffective assistance of appellate counsel must allege sufficient facts that, if proved, would demonstrate appellate counsel was objectively unreasonable in failing to discover and raise a nonfrivolous issue on direct appeal.[29] A motion for postconviction relief based on appellate counsel's failure to raise on direct appeal trial counsel's allegedly deficient conduct fails when it does not allege that appellate counsel knew or should have known to raise the issue.[30]

[19-21] To show prejudice from the alleged deficient conduct of appellate counsel, an inmate on postconviction must

---

[28] See *State v. Keadle, supra* note 12.

[29] See *Smith v. Robbins*, 528 U.S. 259, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). See, also, *State v. Betancourt-Garcia*, 310 Neb. 440, 967 N.W.2d 111 (2021).

[30] See *State v. Betancourt-Garcia, supra* note 29.

allege supporting facts for the assertion that raising the issue on direct appeal would have changed the outcome.[31] The inmate must show a reasonable probability that, but for his or her appellate counsel's failure to properly raise the issue on appeal, the result of the appeal would have been different.[32] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise on direct appeal the issue of trial counsel's ineffectiveness.[33]

### (a) Failure to Seek Redaction of Interview Statements

While we find that German stated sufficiently specific supporting facts for his layered claim regarding his police interview statements, the trial record conclusively shows that German was not prejudiced, even assuming these specific allegations to be true. As the district court indicated, the jury is presumed to have followed the instruction to not "allow sympathy or prejudice to influence [its] verdict." It is an established proposition of law that jurors are presumed to follow their instructions unless evidence to the contrary is shown.[34] German alleged what comments should have been redacted and alleged that he was prejudiced because those comments portrayed him in an unfavorable light such that "[t]he jury may have felt that [he] was rude, spoiled, [and] entitled, and lacked empathy to the community in his criticisms and comments of Imperial and Chase County." German did not allege that any of the jurors would testify that their verdicts were influenced by an impression, from the unredacted statements, of German as being rude, spoiled, and entitled. Mere speculation as to the jurors' impressions of German's opinions, based

---

[31] See *State v. Parnell, supra* note 10.

[32] See *Smith v. Robbins, supra* note 29. See, also, *State v. Parnell, supra* note 10.

[33] See *State v. Parnell, supra* note 10.

[34] *State v. Price*, 320 Neb. 1, 26 N.W.3d 70 (2025).

on the police interview statements, is not enough to overcome the presumption that the jurors followed the instruction to not allow prejudice to influence their verdicts.

(b) Failure to Advise German to Testify

[22] In our de novo review, we also find that German failed to allege a layered allegation based on defense counsel's failure to advise him to testify on his own behalf. Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.[35] German did not allege counsel interfered with his freedom to decide whether to testify, and German confirmed on the trial record that it was his decision not to testify. He instead set forth allegations falling under the umbrella of the reasonableness of his trial counsel's tactical advice.

German's allegation that testifying would have given him an opportunity to explain his police interview statements was too broad and conclusory to satisfy the specificity requirements for stating a claim for postconviction relief. German was more specific regarding what he would have testified to had he not heeded trial counsel's allegedly unreasonable tactical advice. And, read generously, German indicated that trial counsel was aware of his version of events that he would have testified to. Nevertheless, German did not allege in his motion what, if anything, appellate counsel knew or should have known about any of the described testimony German allegedly would have given had he testified in his own defense. Similarly, German made no allegations concerning his appellate counsel's knowledge of the discussions between German and his trial counsel respecting the decision to testify.

Leaving aside the dubious nature of German's version of events that he would have testified to but for trial counsel's

---

[35] See *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

advice, without alleging appellate counsel knew or should have known what German's testimony would have been and what the discussions with trial counsel were regarding German's decision not to testify, German could not allege appellate counsel's ineffectiveness in failing to challenge trial counsel's allegedly ineffective advice. This is especially true where the trial record, which would have been examined by appellate counsel, documented that German had repeatedly discussed with his trial counsel whether to testify and that German had determined it was the better course not to. German failed to set forth sufficient facts that would demonstrate appellate counsel was deficient by failing to discover a nonfrivolous argument to be raised on direct appeal.

### (c) Competency

For similar reasons, we agree with the district court's conclusion that German failed to allege layered allegations for ineffective assistance centering around his alleged mental incapacity due to lack of medication. We find that this claim had the requisite specificity, and because German was not granted an evidentiary hearing, he has not had the opportunity to show that a lack of medication prevented him from understanding what was occurring at trial. But even if that were true, German alleged no facts that would show appellate counsel knew or should have known to raise on appeal trial counsel's failure to challenge his competency.

### (d) Ambrosek's Alleged Past Acts of Prostitution

German's layered assertion that trial counsel should have attempted to adduce Ambrosek's alleged past acts of prostitution likewise fails. German did not allege that appellate counsel knew or should have known Ambrosek had allegedly exchanged sex for drugs before the events in question. He did not even allege that trial counsel knew or should have known of such acts; his allegation that trial counsel should have inferred such acts from Ambrosek's sexual relations with Mann or sexual recordings is unpersuasive.

[23,24] Furthermore, even if trial counsel knew of Ambrosek's alleged sexual history, trial counsel was not ineffective by failing to proffer such evidence at trial, and thus, German was not prejudiced by appellate counsel's failure to raise on direct appeal the issue of trial counsel's ineffectiveness in that regard. We have explained that, as a matter of law, counsel is not ineffective for not attempting to adduce inadmissible testimony.[36] Evidence which is not relevant is inadmissible.[37] Under § 27-401, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We generally disagree with German's supposition that it would be less "terrifying" for Ambrosek to be forced to do what she had previously done voluntarily. Regardless, any prior acts by Ambrosek of exchanging sex for drugs do not make it less probable that German abducted Ambrosek to coerce her into repaying him through similar sex acts. If anything, such evidence would make it more likely that German abducted Ambrosek with that purpose in mind.

## VI. CONCLUSION

Because we find that German failed to allege sufficient facts for any of the individual acts of ineffective assistance of counsel alleged in the motion for postconviction relief, we also find he failed to sufficiently allege facts to support his assertion of cumulative deficient performance. For the foregoing reasons, we affirm the denial, without an evidentiary hearing, of German's motion for postconviction relief.

AFFIRMED.

BERGEVIN, J., not participating.

---

[36] *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

[37] *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018).